Jerry LESTER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 301, Docket 26020.

United States Court of Appeals
Second Circuit.

Argued May 3, 1960.

Decided June 6, 1960.

Louis Mandel, for petitioner, Leonard J. Lefkort, New York City, of counsel.

Norman H. Wolfe, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, C. Guy Tadlock, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before LUMBARD, Chief Judge, HAND, Circuit Judge, and JAMESON, District Judge.

HAND, Circuit Judge.

Lester, the taxpayer, petitions to review an order of the United States Tax Court, holding him liable for deficiencies in his income tax for the years 1951–52, based upon the disallowance of deductions claimed by him as payments of alimony. The facts were as follows: Lester and his wife had three children, aged 13, 11 and 9. They lived in Los Angeles and had been married on August 24, 1934. On April 16, 1951, while the wife was still living in California, though he had himself moved to New York, they entered into an agreement in anticipation of a divorce. This agreement provided that the custody and control of the children should be given to the wife subject to plaintiff's reasonable right of visitation and of having the children with him for thirty days during the summer vacation. The important provision was paragraph 11, which we quote in part:

"11. The husband agrees to pay the wife for the support and maintenance of herself and the children of the parties, namely, Judy Lester, Joan Lester, and Jay Lester, the following amounts commencing with the effective date of this agreement (as said term is hereinafter defined in subdivision (j) of this Article 11):

"(a) For the period ending December 31, 1951, a sum equal to 50% of the husband's gross income commencing with the effective date of this agreement, but not in excess of a total sum of $50,000.

"(b) For the calendar year immediately following the period set forth in subdivision (a) hereof, a sum equal to 25% of the husband's annual gross income during said period of one year, but not in excess of a total sum of $45,000.

"(c) For the calendar year immediately following the period set forth in subdivision (b) hereof, a sum equal to 25% of the husband's annual gross income during said period of one year, but not in excess of the total sum of $45,000.

"(d) For each year immediately following the period set forth in subdivision (c) hereof, a sum equal to 20% of husband's annual gross income during each such year, but not in excess of that sum each year which, after the payment of all income taxes assessable upon the wife with respect to the amounts thus paid to the wife shall equal $15,600.

"(f) In addition to the payments above provided the husband agrees to pay for any extraordinary and unusual medical and dental expenses and fees incurred with respect to any of the children of the parties so long as they are minors and are not emancipated.

\* \* \* \* \* \*

"(i) All payments herein specified shall cease upon the death of the husband or the wife or upon the remarriage of the wife, whichever shall first occur. It is expressly agreed that the wife shall not have any claim against the estate of the husband, should he predecease her, for

any sums payable hereunder, except such sums as may have been due and payable to her pursuant to the terms hereof prior to his death. In the event that any of the children of the parties hereto shall marry, become emancipated, or die, then the payments herein specified shall on the happening of each such event be reduced in a sum equal to one-sixth of the payments which would thereafter otherwise accrue and be payable in accordance with the terms and provisions hereof."

By paragraph 8(e) the parties also agreed that, so long as the husband was required by the agreement or by law to support the children, he would cause them to be jointly named as beneficiaries to the extent of $30,000 of the proceeds payable under three life insurance policies assigned by his wife to him.

The taxpayer performed the agreement by paying to his wife the sums specified in paragraph 11 and deducted on his income tax returns as alimony the "periodic payments" made during the years 1951–52. The Commissioner and the Tax Court held that he was entitled to deduct only one half of these as alimony, because subdivision (i) of paragraph 11 showed that one half was all that she was entitled to keep for her own use, the other half being paid for the maintenance and support of the children.

The question involved has been the subject of a number of decisions as to the proper interpretation of § 22(k) of the Internal Revenue Code of 1939, 26 U. S.C.A. § 22(k), which provides that "periodic payments * * * in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon * * * such husband * * shall be includible in the gross income of such wife." The "periodic payments" prescribed by the agreement were clearly imposed upon the taxpayer because of a "marital or family relationship"; and were therefore deductible by him. However, a difficulty arises from the succeeding sentence of § 22(k), which reads as follows: "This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband." The courts are not unanimous as to what is meant by the phrase, "fix, in terms of an amount of money or a portion of the payment." In the case at bar the Commissioner and the Tax Court have read the language in paragraph 11(i) of the agreement as "fixing" one half of all the payments made to the wife as sums "payable for the support of minor children of such husband." If they are so read, the decision of the Tax Court was of course right; if not, all the payments are to be regarded as gross income of the wife, and the deficiencies should be expunged.

In Weil v. Commissioner, 240 F.2d 584, 586, we held that a very similar agreement did not "fix, in terms * * * or a portion of the payment" what the wife was to spend for the support of the children. We held, 240 F.2d at page 588, Judge Medina writing, "that sums are 'payable for the support of minor children' when they are to be used for that purpose only. Accordingly, if sums are to be considered 'payable for the support of minor children,' their use must be restricted to that purpose, and the wife must have no independent beneficial interest therein." In that case the agreement did not provide for any reduction in the "periodic payments" if the wife remained unmarried, but it did reduce them upon the death or marriage of a child if she did remarry. The same reduction was to be made also in case a child cared to live apart from the wife after the wife remarried. So far as we can see our second decision, Hirshon's Estate v. Commissioner of Internal Revenue, 2 Cir., 250 F.2d 497, neither adds to, nor detracts from, the first. Deitsch v. Commissioner, 6 Cir., 249 F.2d 534, accords with our interpretation and distinguished a former decision of the same court (Budd v. Commissioner, 177 F.2d 198) on the ground that a fixed sum had been "earmarked" as payable for a son's support.

In Eisinger v. Commissioner, 9 Cir., 250 F.2d 303 and Metcalf v. Commissioner, 1 Cir., 271 F.2d 288 the "periodic payments" were not allocated as between support of the children and alimony, but they were reduced as each child reached majority or died. Both courts found in the provisions for such reductions evidence that the "terms" of the agreements had from the outset "fixed" a portion of the "periodic payments" as being "for the support" of the children. For this reason they charged the wife's gross income with only the remaining portion of the payments. It is quite true as Judge Aldrich said in Metcalf v. Commissioner, supra, 271 F.2d 291, that "it is highly impractical, if not impossible, to segregate every expense from day to day so that the parent has 'no independent beneficial interest therein.'" However, the language of the statute seems to us not to submit itself to be recast so freely. That part of a "periodic payment" that is not to be charged to the husband's gross income is only that which the "written instrument" (shall) "fix, in terms of * * * a portion of the payment, as a sum which is payable for the support," etc. It by no means follows, because when a child dies or marries or reaches twenty-one the "periodic payments" are diminished, that from the outset that child's support has been "fixed" by the amount of the possible reduction. Indeed such a construction would defeat what is the basic meaning of such an agreement, for the mother is to be free to use her judgment in allocating the collective unit among her children and herself. It is true that it is assumed that she will use the payments to some extent to support the children, but we need not say that there could never be occasions when a court would overrule her discretion. In any case she is ordinarily free to allocate the payments as she thinks best, from time to time, spending on herself what she may think will in the end be for the best of the group. The fact that, when the group changes, the "periodic payments" are reduced in a "fixed" proportion does not indicate that meanwhile the wife's discretionary power has been limited. Indeed, we do not see why, if the existing allocation at the time of a child's death, marriage, or majority were to determine his proportion of the earlier payments, it does not follow that the wife's discretion is taken away altogether. Unless we have misapprehended its meaning, Congress intended to tax the wife on all the payments unless the agreement itself declared in what proportion she must allocate them to the children.

The Tax Court seems to have thought that it would be unfair to impose upon the wife an income tax upon that part of the payments that might be used to discharge the husband's duty to support the children. The sentence of § 22(k) that we are discussing recognizes this possibility and attempts to provide against it, but Congress apparently thought that it was impossible to do so except when the agreement "fixes" in advance some "portion of the payment, as a sum which is payable for the support of minor children." When the agreement does this the spouses have made the best forecasts they can as to what the allocation shall be. Like all other forecasts they are necessarily no more than guesses, and what seems a fair division today will often prove grossly unfair tomorrow. But there is no escape from accepting that chance except by repeated appraisals of the relative needs of the individuals making up the group; and we agree with Judge Aldrich that that "is highly impractical, if not impossible."

Moreover, it is not so gross a solecism as it might appear to make the wife's income tax depend in part upon receipts that she gives to others. If, as we have tried to show, there is no other way to meet the prime purpose of the spouses but to leave the allocation from time to time in the wife's hands, it is an unavoidable consequence that she will be taxed on whatever she gives away. We cannot find in that an injustice that demands the disregard of plain language patently chosen with care. In spite of that burden, the control of the wife still has most

of the component interests that in combination are "property." She may believe it desirable at times not to allocate to a child any "part" of a "periodic payment," because the child needs her continued supervision at home, and that free spending money is the one thing to be avoided. When all is said there is little difference between a control so nearly absolute as this and full fledged "ownership." "But what are the rights of ownership? They are substantially the same as those incident to possession. Within the limits prescribed by policy the owner is allowed to exercise his power over the subject-matter uninterfered with and is more or less protected in excluding others from such interference. The owner is allowed to exclude and is accountable to no one. The possessor is allowed to exclude all but one and is accountable to no one but him." (Holmes, The Common Law, p. 246.)

Order reversed; tax deficiencies expunged.