JACK GALIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Galin v. Commissioner
Docket No. 2226-70 SC.
United States Tax Court
T.C. Memo 1973-62; 1973 Tax Ct. Memo LEXIS 226; 32 T.C.M. (CCH) 269; T.C.M. (RIA) 73062; March 19, 1973, Filed Jack Galin, pro se. William J. Doherty, for the respondent. INGOLIA
MEMORANDUM FINDINGS OF FACT AND OPINION
INGOLIA, Commissioner: The respondent determined deficiencies in the petitioner's Federal income tax for the calendar years 1965 and 1966 in the amounts of $393.09 and $488.70, respectively.Concessions having been made, the remaining issues before the Court in each year are as follows: (1) whether the petitioner may deduct payments made by him as alimony payments under section 215 [1] or, alternatively, if 2 they constitute payments for child support, whether he is entitled to dependency exemptions for his two children under section 151 and section 152; (2) whether the petitioner is entitled to a dependency exemption for his mother; and (3) whether the petitioner is entitled to claimed unreimbursed business expenses under section 162. FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly. The petitioner, Jack Galin, resided in the Bronx, New York, at the time his petition was filed. He filed *228 his individual 1965 and 1966 Federal income tax returns with the District Director of Internal Revenue at New York, New York. Issue No. 1. Alimony vs. Child Support Payments. The petitioner was married to Muriel Galin in 1948 in the Bronx, New York. They have two children. Linda was born in 1950 and Nadine in 1953. On December 11, 1958, Muriel filed a petition with the Domestic Relations Court of the City of New York - Family Court Division, Docket No. 2506-58, alleging nonsupport. On January 5, 1959, the Court found that the petitioner "was legally chargeable with the support of the dependent * * * named in the petition herein" and directed him to pay $25 per week into the Court, "towards the support of 3 the said dependent." On October 5, 1959, after Muriel had again petitioned the Court, the Court modified its earlier Order and directed the petitioner to pay $40 per week plus $5 per week to make up certain arrears. In 1965 and 1966, the petitioner paid into the Court $2,040 in each year under this Order. On May 9, 1963, Muriel and the petitioner entered into a separation agreement which contained the following pertinent provisions: 3. The Wife waives any right *229 she may have to claim support and maintenance from the husband. 4. The Husband shall pay to the Wife the sum of $20.00 per week, each, for the support of each child. As each child attains her majority, marries, or becomes self-sustaining, the support for that child shall cease. Self-sustaining herein means employed or in business and leaves the Wife's home. On August 2, 1963, Muriel obtained a divorce from the petitioner in Juarez, Chihauhau, Mexico, incorporating the May 9th separation agreement in its terms. On December 19, 1968, Muriel filed a petition in the Family Court of the State of New York, Docket No. F4239-1968, for Enforcement of Support Order Made by The Second Civil Court of Juarez, which order incorporated the separation agreement. On April 24, 1969, the Family Court ordered the petitioner to pay $40 per week for the support of his two children in accordance with the separation agreement that had been incorporated into the 4 Mexican divorce decree. In his tax returns for 1965 and 1966, the petitioner deducted $2,080 and $2,155, respectively, as support payments made to his wife. The evidence shows that the petitioner paid $2,040 in each year to the Family *230 Court of New York, which payments were credited under Docket No. 2506-58. The respondent has disallowed the claimed deductions. Issue No. 2. Dependency Exemption. In 1965 and 1966 and for some years prior thereto, the petitioner's mother lived with him in a three-room apartment in New York City. She was 67 years old in 1965 and received social security benefits of $1,080 per year. (There is also evidence that she received World War I benefits totaling $576, but the record does not disclose when she received these benefits.) The petitioner testified at trial as follows: DEPENDENT INFORMATION
Food
$ 600
Rent
528
Utilities
150
Clothing
250
Medical/Dental
225
Vacations
245
Transportation
65
Laundry, dry cleaning
75
Entertainment, organizations, religious institutions, etc.
65
Personal care, haircuts, misc.
40
Total
$2,243
Dependent contribution
$1,080 (Soc. Sec.)
Your contribution
1,163
$2,243 5 Petitioner's income in 1965 was $5,888.66 and in 1966 was $5,153.39. Issue No. 3. Business Expense. In 1965 and 1966, the petitioner worked as a full time insurance agent for the Metropolitan Life Insurance Company. In addition *231 to his basic salary, he had an "expense allowance" of $490 in 1965 and $520 in 1966. He included these amounts in gross income on his tax returns. In 1965 and 1966, he claimed deductions of $353 and $429, respectively, for business expenses, showing total expenses of $843 in 1965 and $949 in 1966. The expenses claimed included expenditures for transportation, union dues, postage, advertising, etc. At trial, the petitioner noted that he should have claimed the total expenses ($843 in 1965 and $949 in 1966) on his tax returns since he had included the "expense allowance" in gross income. While the record is far from clear, it appears that the respondent allowed business expenses of $490 in 1965 but did not allow any in 1966. The petitioner's job required him to visit clients throughout the New York City area. He owned no automobile and traveled by taxicab or subway. It was necessary that he travel back and forth each day between his home, his office, and his clients. He also expended amounts for business related items such as postage or telephone. At trial, he 6 testified that he kept a contemporaneous expense record for each year and presented a book and schedule which *232 listed a particular item with the amount spent (e.g., taxi - $2). There was no further breakdown identifying the nature or purpose of the expenditure. In each year, the travel expense claimed exceeded the "expense allowance" made by the employer. OPINION Issue No. 1. Alimony vs. Child Support Payments. Section 215 allows a husband to deduct payments made to his wife if they are includable in her income under section 71. That section states in pertinent part that: (3) Decree for support. - If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. Section 71 also provides that all or part of the payments received by a wife from her husband are not includable in her income if the decree, instrument, or agreement "fixes" all or part of the payments as a sum which is payable for the support of the minor children of the *233 husband. Here, the resolution of the issue involved turns on whether the payments made by the petitioner were made pursuant to the decree of the New York Family Court or pursuant to the 7 Mexican divorce decree which incorporated the separation agreement. Under the New York decree, the petitioner was ordered to pay $40 a week (initially, $25 per week) to "the support of the dependent (Mrs. Galin)" named in the petition. No amount was "fixed" for the support of the children and therefore, under the decree, any payments must be treated as alimony payments reportable as income by the wife and deductible by the husband. Commissioner v. Lester, 366 U.S. 299 (1961), affg. 279 F.2d 354, which had reversed 32 T.C. 1156. On the other hand, under the Mexican divorce decree and the incorporated separation agreement, the payments made were clearly for the support of the children and would not be deductible by the husband. On the basis of the record before us, we believe there is no question but that the payments were made pursuant to the New York decree. The petitioner actually made the payments directly to the Court which credited them as being *234 paid under the decree entered in the nonsupport action brought by Mrs. Galin. The fact that there was a later separation agreement and Mexican divorce did not alter the nature of the payments for even after they took place, the petitioner continued to pay the New York court. It was not until 1968 that the New York court was asked by Mrs. Galin to recognize the Mexican divorce and separation agreement and was asked to enforce the support order made by the Mexican court. So here, the payments 8 made by the petitioner totaling $2,040 in each of the years 1965 and 1966 are deductible alimony payments. [2] Having so decided, we need not reach the question of whether or not the petitioner is entitled to claim his children as dependents. Issue No. 2. Dependence Exemption. The question involved here is a factual one. Under section 152(a), a dependent is defined as one who satisfies the required degree of relationship to the taxpayer and "over one-half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the *235 taxpayer." In order to establish that he has contributed over one-half of a dependent's support, a taxpayer must also establish the total support for the dependent. Victor Blanco, 56 T.C. 512 (1971). Here, the petitioner alleges that the total amount expended for the support of his mother in each of the years 1965 and 1966 was $2,243. After subtracting her social security payments, he concludes that he spent $1,163 for the support of his mother. There is no question but that the petitioner's mother does live with him and that he does expend money for her support. What we must determine is whether or not he spent as 9 much as he said he did. While the evidence is far from ideal, we believe the petitioner's testimony. We believe he did provide more than one-half of his mother's support in 1965 and 1966. The amounts claimed for each item are small and reasonable and there are no extravagances. [3] The amounts claimed are not excessive when compared with the petitioner's income. [4] Consequently, the dependence exemption in each year for the petitioner's mother is allowable. *236 Issue No. 3. Business Expense. Section 162(a) allows a taxpayer to deduct all the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Once again, the question involved is a factual one. Here, the petitioner was an insurance agent. He contends that his expenses for transportation, postage, advertising, etc., exceeded the amounts his employer gave him as an "expense allowance." On the basis of the record before us, we think the petitioner has failed to establish this fact. While he kept 10 a notebook which allegedly contained his daily expenses, it did nothing more than categorize a particular expense and the record is devoid of any further proof. For example, while the notebook lists expenses for electricity, advertising, stationery, and postage, there is no specific proof as to when, how, and in regard to what matters those expenses arose. Indeed, there is no indication as to why the petitioner had such expenses when the company office was available for him to use. Finally, we note that some of the notations in the book list the same expenses each day and it appears they represent estimates rather than an itemization *237 of the actual expenditure made. So here, we believe the "expense allowance" made to the petitioner by the Metropolitan Life Insurance Company ($490 in 1965 and $520 in 1966) was adequate to cover the expenses he incurred in carrying on his trade or business. Apparently, the respondent has allowed the "expense allowance" in 1965, but not in 1966. It is allowable in each year. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. Cf. Revenue Ruling 70-61, 1970-1 C.B. 18; Betty Yuter, et al., T.C. Memo. 1967-167↩. 3. Cf. Katherine Atchison, T.C. Memo. 1958-140; Thomas W. Lockhart, T.C. Memo, 1960-195, dismissed (C.A. 10, 4-18-61); Helen Kellner, T.C. Memo. 1971-103; Margaret M. Elliott, T.C. Memo. 1970-3↩. 4. Cf. Robert Mack, T.C. Memo. 1951-239; Anne M. Nettles, T.C. Memo. 1970-315↩.