SONYA G. GAMSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gamse v. Commissioner
Docket No. 25352-82.
United States Tax Court
T.C. Memo 1984-618; 1984 Tax Ct. Memo LEXIS 54; 49 T.C.M. (CCH) 171; T.C.M. (RIA) 84618; November 28, 1984. Richard C. Fox and Robert E. Chernicoff, for the petitioner. Russell K. Stewart, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Amount
1977
$2,595
1978
$3,897
The issue for decision is whether amounts received by petitioner from her former husband in 1977 and 1978 pursuant to a written separation and property settlement agreement, which was filed in a State court incident to their divorce, are includable in petitioner's gross income under section 71. [1]
FINDINGS OF FACT At the time her petition was filed, petitioner was a legal resident of Harrisburg, Pennsylvania. Petitioner *56 filed her Federal income tax returns for 1977 and 1978 as a single person claiming a dependency exemption only for herself. Prior to February 7, 1977, petitioner was married to Norman L. Gamse (Gamse) and they had three children, Celeste, Pamela, and Sheri, who were then 15, 13, and 9 years of age, respectively. On that date, petitioner and Gamse filed with the Circuit Court of Lee County, Florida, a document entitled "Separation and Property Settlement Agreement" (separation agreement). The preamble to the agreement states that the purposes of the parties are "to settle their respective property rights and to agree on support provisions for the issues [sic] of the marriage." The agreement gave petitioner primary custody of the children and contained the following provision entitled "Permanent Alimony and Child Support:" HUSBAND agrees to pay WIFE, as and for her support and that of the children, the sum of $1,700.00 each and every month commencing the first day of the month following the entry of a decree of divorce in said pending action and continuing from month to month thereafter. Said amount shall be paid as follows: (a) $850 on the first of the month. *57 (b) $850 on the 15th of the month. IT IS FURTHER AGREED, that the amount of sums set forth herein shall automatically be reduced by the sum of $425.00 per month when each child reaches the age of eighteen (18), marries, dies or becomes self-supporting. IT IS FURTHER AGREED, that the sum of money set forth herein shall automatically be reduced $425.00 whenever the WIFE remarries or dies. IT IS FURTHER AGREED, that the sum of money set forth herein shall automatically terminate upon the death of the husband. IT IS FURTHER AGREED, that these payments shall be reduced at the rate of $100.00 per month, per child for such time as the HUSBAND has temporary physical possession of any child for a period of time in excess of fourteen (14) consecutive days. In addition, the agreement contained other paragraphs obligating Gamse to pay his daughter Sheri's tuition at a private school "during her minority or for any portion thereof that she needs private school training"; to obtain and carry hospital and major medical insurance for the minor children; and to keep the insurance in force "until such time as there are no issues [sic] of the marriage for which he is paying child support. *58 " The agreement also contained the following paragraphs entitled "Dependents - Income Tax" and "Life Insurance:" DEPENDENTS - INCOME TAX
HUSBAND AND WIFE agree that the HUSBAND shall claim the children as dependent [sic] from this date on, dueto the fact that the support money set forth in this Agreement do [sic] cover more than 50 percent of the monies necessary for the proper needs of the minor children of the parties. The HUSBAND and WIFE further agree that the HUSBAND is providing more than 50 percent of the necessary monies for the support of the minor children. LIFE INSURANCE
HUSBAND shall maintain his life insurance and disability insurance until his child support obligations cease. Petitioner received $17,000 in 1977 and $20,400 in 1978 from Gamse pursuant to the separation agreement. On her Federal income tax return for each of those years, petitioner reported alimony income of $5,100. In the notice of deficiency, respondent determined that petitioner had additional alimony income in the amounts of $11,900 in 1977 and $15,300 in 1978. OPINION As a general rule, periodic payments in discharge of legal marital obligations pursuant to a divorce *59 decree are taxable to to the recipient spouse under section 71(a) [2] and deductible by the payor spouse under section 215. Under section 71(b), however, any portion of any such payment "which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment" which is "payable for the support of minor children" of the payor spouse is neither taxable to recipient nor deductible by the payor. *60 Respondent contends that the separation agreement signed by petitioner and Gamse does not "fix" the sum payable by Gamse for child support within the meaning of section 71(b) and that, therefore, petitioner is taxable on the full amount of the payments she received from him, citing Commissioner v. Lester,366 U.S. 299 (1961), affg. 279 F.2d 354 (2d Cir. 1960), revg. 32 T.C. 1156 (1959). Petitioner contends that the separation agreement, read as a whole, does "fix" the amount of the child support payable by Gamse at three-fourths (or $1,275 per month) of the $1,700 monthly payments and, therefore, she is only taxable under section 71(b) on one-fourth of such payments. To support her position, petitioner cites Gotthelf v. Commissioner,48 T.C. 690 (1967), affd. 407 F.2d 491 (2d Cir. 1969); West v. United States,413 F.2d 294 (4th Cir. 1969); and Abramo v. Commissioner,78 T.C. 154 (1982). We are compelled to hold for respondent. In Commissioner v. Lester,supra, the Supreme Court held that, in order to relieve the recipient spouse of tax *61 on support payments, the predecessor of section 71(b) requires that the operative instrument fix as child support a definite percentage or a sum certain of the contemplated payments; otherwise, the payments are deductible by the payor spouse and includable in the recipient spouse's gross income. The Lester agreement provided for certain payments to the wife "for the support and maintenance of herself and the children of the parties"; the payments were keyed to the husband's gross income, Lester v. Commissioner, 32 T.C. at 1157. The agreement further specified (366 U.S. at 300): [I]n the event that any of the [three] children of the parties hereto shall marry, become emancipated, or die, then the payments herein specified shall * * * be reduced in a sum equal to one-sixth of the payments which would thereafter otherwise accrue * * *. The Government contended that the agreement sufficiently identified one-half of the payments as having been made for the support of the three children and that such one-half was not deductible by the husband. The Supreme Court rejected the argument stating with respect to the language of section *62 71(b) (366 U.S. at 303): This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress. See also sec. 1.71-1(e), Income Tax Regs.
We think the Lester rule requires us to reject petitioner's argument. The separation agreement signed by Gamse and petitioner provides for a monthly payment of $1,700; for a reduction by the sum of $425 per month when each child reaches the age of 18, marries, dies, or becomes self-supporting; and for a reduction by the sum of $425 per month whenever the wife remarries or dies. It is not enough under Lester, however, that there be "a sufficiently clear purpose" as to the *63 amount or portion of the payment allocable to child support; the decree or written instrument incident to the divorce must "specifically designate" or "fix" the amount or portion which is to be applied to the support of the children. 366 U.S. at 303, 305. In the words of section 71(b), the instrument must fix "in terms of an amount of money or a part of the payment" the sum payable for child support. The separation agreement signed by petitioner and Gamse does not do so. Petitioner cites numerous other provisions of the separation agreement, summarized or quoted in our findings, which refer to payments by Gamse in support of the children, including the provisions on medical insurance, Gamse's right to claim dependency exemption deductions for the children, [3] and Gamse's obligation to maintain life insurance "until his child support obligations cease." Petitioner argues that these provisions support the inference that $1,275 of the monthly payments constituted child support. Of course, the cited provisions of the separation agreement must be read along with the one dealing with permanent alimony and child support; the agreement must be read as a whole. When *64 all of the provisions are read together, however, they do not meet the Lester standard. Lester makes clear that an inference is not sufficient; to qualify an amount as child support, it must be fixed or specifically designated as such,either as a sum certain or as a definite percentage of the total payment. Petitioner also argues on brief that the Lester decision is explained by an ambiguity in the agreement in that case as follows: In Lester, the settlement agreement was internally inconsistent. On the one hand, the Lesters' agreement provided "that as, if and when any one of the children married, became emancipated or died the total payment would be reduced by one-sixth" [366 U.S. at 305], which implied "child support. *65 " On the other hand, the agreement also "pretermitted the entire payment in the event of the wife's remarriage" [366 U.S. at 305], which implied "alimony." The internal inconsistency, said the Court, required that one determine the "child support" allocations" by inference or conjecture" [366 U.S. at 306] and that was not permitted. Petitioner argues that the agreement here suffers from no such ambiguity. We think this argument misreads Lester. True, in Lester, the Government, which sought to deny the husband a section 215 alimony deduction, emphasized that the total payment would be reduced by one-sixth on the death or emancipation of one of three children and argued that this one-sixth reduction for one child showed that one-half of the total payment was for the support of the children. True, also, the Supreme Court responded that the Lester agreement pretermitted the entire payment in the event of the wife's remarriage and stated that "it is as consistent to say that this provision had just the opposite effect." 366 U.S. at 305. The Supreme Court, however, found no internal inconsistency; it merely used these *66 contrasting arguments to underline its point that Congress intended section 71(b) to be read literally and strictly so that uncertainties in tax consequences would be eliminated. The Lester agreement, like the one signed by Gamse and petitioner, provided for support for both the wife and the minor children. The reason that the Government failed in its effort in Lester to deny the husband a deduction for his payments to his former wife was that the Lester agreement did not specifically designate or fix the amount or the portion of the payment allocable to child support. For the same reason, petitioner must include the payments she received from Gamse in her gross income. Petitioner's reliance on Gotthelf v. Commissioner,48 T.C. 690 (1967), affd. 407 F.2d 491 (2d Cir. 1969), is misplaced. In that case, the separation agreement provided for the husband to pay to the wife $12,000 annually for her support and for the support, care, maintenance, and education of their two children. In the event of the wife's remarriage, the $12,000 annual payment to the wife was to be reduced to $7,000; when each child reached the age of 21, or in the event *67 of the death or marriage of either child, the amount payable was to be reduced by $3,500 on an annual basis so that when both children reached age 21, or had died, or had married, or otherwise no longer lived under the care and supervision of the wife, then the obligation would be to pay the wife $5,000 annually in monthly installments if she had not remarried. A rider attached to the agreement read as follows: This agreement shall be binding on the Estate of the husband to the extent of the payment of SEVEN THOUSAND ($7,000.00) DOLLARS for the benefit of the two children, as in this agreement provided for. Even though the "plain implication" of the agreement without the rider was that $7,000 of the annual payment "was intended as child support," this Court was satisfied that, in the absence of the rider, the $7,000 payment "would not qualify as child support under section 71(b), in accordance with Commissioner v. Lester,366 U.S. 299." 48 T.C. at 692. This Court found, however, that the rider "made specific that which would have been left to inference in its absence, and thus supplied what was lacking in Lester." 48 T.C. at 693. *68 The court of appeals agreed with this Court that the "rider clause cures the ambiguity or defect." 407 F.2d at 494. No provision comparable to the Gotthelf rider meets the Lester requirement in the instant case. West v. United States,413 F.2d 294 (4th Cir. 1969), another case relied upon by petitioner, is likewise distinguishable. In that case, the agreement between William and Annie provided for the payment of $35 per week as alimony and for support of their three children. When each child reached age 21 or became self-supporting, the weekly sum was to be reduced by $10; if the wife remarried, the sum was to be reduced by $5 per week. Another clause, found crucial by the court, provided that Annie "undertakes to expend at least Thirty ($30.00) Dollars per week * * * for the use and benefit of their infant children." The court said (supra at 295): If an agreement providing a sum for both alimony and child support contains stated reductions in the amount upon remarriage of the wife, or a child's marriage, achievement of self-sufficiency, or attainment of the age of 21, seemingly it can be inferred just how much of the payment *69 is child support and how much is alimony. Such an inferential determination does not, however, provide the specificity required by section 71(b). * * * The Court concluded that Annie's undertaking to expend at least $30 per week for the use and benefit of their infant children provided the needed specificity. In the instant case, an inference can be made as to the amount of child support Gamse was to provide to petitioner, but there is simply no provision in their agreement comparable to the "undertakes to expend" provision found crucial in the West case. The third case relied on by petitioner is Abramo v. Commissioner,78 T.C. 154 (1982). In that case the agreement provided that, for tax purposes, $200 of the base amount paid by husband Arnold was for wife Mary Louise and $150 was for each of their four children. Arnold contended that he could deduct the entire $800 because the allocation to the children was prefaced with the phrase "for tax purposes." This Court rejected Arnold's argument, recognizing (at 159) that "Lester requires only words of designation, not words of obligation. No talismanic rubric is demanded; only specification *70 of a certain amount" as stated in West v. United States,supra at 295. We find nothing of any help to petitioner in the Abramo opinion. [4]
The language of section 71(b), the holding in Lester, and the legislative history of section 71, reviewed in some detail in Lester, shows that Congress intended divorcing parents to be free to allocate the income tax burden of support payments between themselves. This is a matter of negotiation between separating spouses. The section implicitly recognizes that the allocation of the tax burden can affect the amount to be paid and requires certainty *71 so that disputes can be avoided. For a recipient spouse to be relieved of the tax burden, section 71(b) requires that the instrument embodying the separation agreement fix, designate, or earmark, in terms of an amount of money or in terms of a part of the payment, the amount of child support she is to receive. The instrument in this case did not do so. None of the amounts that petitioner received pursuant to the separation agreement, therefore, can be excluded from her gross income as child support. To reflect the foregoing, particularly the concession referred to in footnote 3, supra,
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.↩
2. Sec. 71(a)(1) and (b), as in effect in the tax years here at issue, is as follows: (a) General Rule.-- (1) Decree or divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (b) Payments to Support Minor Children.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payument for such support. The revision of this section made by sec. 422 of the Tax Reform Act of 1984 is not here applicable.↩
3. See sec. 152(e) for a description of the circumstances in which such an agreement is effective. Respondent's trial memorandum, filed Feb. 13, 1984, states in part: If the Court sustains the respondent's determination [that the amounts received by petitioner from Gamse are taxable to her], respondent concedes petitioner's entitlement to the exemptions for her minor children and the adjustment for taxes. * * *↩
4. Petitioner offered as evidence a "Stipulation Modifying Separation and Property Settlement Agreement" signed by her and Gamse on Jan. 23, 1981.This agreement does not purport to be retroactive but appears to have been adopted in order to resolve a variety of issues that had arisen between petitioner and Gamse. We find nothing in this modifying agreement or in certain correspondence and cancelled checks that petitioner offered as evidence that strengthens her contention that the separation agreement between her and Gamse meets the requirements of sec. 71(b).↩