CLYDE STOKES WELLS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LOUISE N. WELLS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wells v. Commissioner
Docket Nos. 35489-84, 37664-84.
United States Tax Court
T.C. Memo 1986-516; 1986 Tax Ct. Memo LEXIS 91; 52 T.C.M. (CCH) 833; T.C.M. (RIA) 86516; October 20, 1986. Clyde S. Wells, pro se. Louise N. Wells, pro se. Meryl J. Fuchs-Goldberg, for the respondent. DINAN
MEMORANDUM FINDINGS OF FACT AND OPINION DINAN, Special Trial Judge: These cases were assigned to Special Trial Judge Daniel J. Dinan pursuant to section 7456(d)(3) and Rules 180, 181 and 182 of the Tax Court Rules of Practice and Procedure.[1]
In these consolidated cases [2] respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
Docket No.
Year
Deficiency
Clyde Wells
35489-84
1980
$1,127
1981
1,383 Louise Wells
37664-84
1980
859   1981
980   1982
851   *94 The issues for decision are (1) whether payments made by Clyde Wells to Louise Wells in 1980, 1981 and 1982 were includable in her gross income in those years as alimony payments, (2) whether payments made by Clyde Wells to Louise Wells in 1980 and 1981 were deductible alimony payments, (3) whether Clyde Wells or Louise Wells is entitled to the dependency exemptions for their daughters Karen and Debra on their 1980 and 1981 returns, (4) whether Louise Wells is entitled to a dependency exemption for Debra on her 1982 return, and (5) whether Louise Wells satisfied the requirements for head of household filing status on her 1982 return. [3]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. When petitioner Clyde S. Wells (Mr. Wells) filed his petition in his case he was a resident of Augusta, Georgia. He timely filed his Federal income tax returns with the Internal *95 Revenue Service Center in Chamblee, Georgia, for the years 1980 and 1981. Petitioner Louise N. Wells (Mrs. Wells) resided in Decatur, Georgia, when she filed her petition in her case. She timely filed her Federal income tax returns, using head of household status, with the Internal Revenue Service Center in Chamblee, Georgia, for the years 1980, 1981 and 1982. Petitioners were divorced in 1964 pursuant to a decree entered by the Richland County Court for the State of South Carolina. Under the terms of that decree, Mrs. Wells was awarded custody of the petitioners' minor children. That decree further provided that Mr. Wells, as respondent in the divorce proceeding, was to: * * * pay to the petitioner, Louise Newsome Wells the sum of Forty ($40.00) Dollars per week as support for herself and said minor children as well as continue payments on the aforesaid house in the amount of $80.67 per month or furnish a home for petitioner and his three children. Subsequently, Mr. Wells petitioned the Superior Court of Dekalb County, Georgia, for a modification of the original South Carolina divorce decree. In October of 1981, petitioners signed a consent order whereby Mr. Wells agreed *96 to deed his home, located at 1712 Carter Road in Decature, Georgia, to Mrs. Wells. The order provided that Mrs. Wells: * * * in return, agrees that she will continue to receive the weekly payments of $40.00 under the South Carolina Decree up through and continuing through the last week in June 1982, at which time all future periodic or weekly payments will cease and terminate and she will have no further right to claim such periodic payments. During each of the years in issue, petitioners' daughters, Karen and Debra, did not reside full-time with either petitioner; they attended colleges located in Georgia on a full-time basis and lived away from home. Karen's undergraduate curriculum required that she attend college on a year round basis. Debra, while also a full-time student, spent her summer vacations with Mrs. Wells at the Carter Road residence. Karen was graduated from college in June 1982, whereupon she moved permanently to Macon, Georgia. After graduation in August of 1982 Debra moved back to the Carter Road residence for a brief period of time, [4] before she too moved permanently away from home to Augusta, Georgia. *97 In 1980 and 1981, Mr. Wells made payments pursuant to the divorce decree of 1964 in the amount of $2,080 for each year. On his return for each of those years he deducted $2,080 as alimony payments and claimed Karen and Debra as dependents. In his statutory notice of deficiency issued for the years 1980 and 1981 to Mr. Wells, respondent determined that the $2,080 deducted in each year could not properly be classified as alimony payments and that he was not entitled to the dependency exemptions claimed. In a separate notice of deficiency issued to Mrs. Wells, respondent determined that she failed to include in income in 1980, 1981, and 1982, alimony payments received from Mr. Wells in the amounts of $2,080, $2,397 and $2,516.72, respectively. [5] Respondent also determined that she was not entitled to claim Karen and Debra as dependents in 1980 and 1981. He further determined that Mrs. Wells was not entitled to claim Debra as a dependent on her 1982 return and that she had incorrectly filed her return using head of household status for that year. *98 To the extent that respondent has taken inconsistent positions in these cases on the alimony and dependency exemption issues for the years 1980 and 1981, his position is that of a stakeholder. OPINION Alimony payments are deductible from the gross income of the payor spouse if they are required by section 71 to be included in the gross income of the spouse to whom paid. Section 215. Our inquiry will first focus on whether Mrs. Wells should have included in her gross income the amounts paid to her by Mr. Wells in 1980, 1981 and 1982. (1) Payments to Louise Wells.
Section 71(a)(1) generally provides that a wife's gross income includes periodic payments received after a decree of divorce in discharge of a legal obligation which is imposed on the husband due to a marital or family relationship under that decree. Section 71(b), however, provides that subsection (a) is inapplicable to that part of any payment which the terms of the decree specifically fixes, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children. Petitioner, Louise Wells, contends that the amounts received by her in 1980, 1981, and 1982, *99 under the 1964 South Carolina divorce decree, constitute child support payments excludable under section 71(b). Respondent's contentions to the contrary focus on the statutory requirements of section 71(b) as interpreted by the Supreme Court in Commissioner v. Lester,366 U.S. 299 (1961) where the Court stated, at page 303 "[t]he agreement must expressly specify or 'fix' a sum certain or percentage of the payment for child support before any payment is excluded from the wife's income * * *." Based on the operative language of the 1964 decree and the requirements of section 71(b), we agree with respondent. Commissioner v. Lester,supra, held that payments are not to be treated as child support payments unless they are expressly designated as such in the divorce decree. The 1964 divorce decree provides that Mr. Wells is to pay "to the petitioner, Louise Newsome Wells, the sum of Forty ($40.000) Dollars per week as support for herself and said minor children * * *." This language in too imprecise to satisfy the degree of specificity required under section 71(b) and Lester. As was stated in Commissioner v. Lester, supra at 303: *100 The statutory requirement is strict and carefully worded. It does not say a "sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of Congress. Accordingly, because the 1964 decree fails to specifically "fix" all or any part of the $40.00 payments which constitute child support as required by section 71(b) and Lester they cannot be classified as child support payments within the purview of section 71(b). [6] We conclude that the $40.00 weekly payments received by Mrs. Wells from Mr. Wells in 1980, 1981 and 1982 constitute alimony payments includable in her gross income. Accordingly, we find for the respondent on this issue. (2) Deductibility of Alimony Payments.
Pursuant to our finding that Mrs. Wells should have included in her gross income, the payments received *101 from Mr. Wells, under section 71(a)(1), we also find that Mr. Wells is entitled to deduct as alimony, those identical amounts paid in 1980 and 1981. Section 215(a). (3) Dependency Exemptions for the Years 1980, 1981 and 1982.
Section 151(e) provides for an exemption for each dependent as defined in section 152. Section 152(a) defines the term "dependent" to include, inter alia, a son or daughter of the taxpayer, over half of whose support for the calendar year was received from the taxpayer. The term "support" includes food, shelter, clothing, medical care, education, and the like. Section 1.152-1(a)(2)(i), Income Tax Regs. The burden of establishing the amount a taxpayer contributed toward the support of a child, and that the amount exceeded one-half of the total support, generally rests with the taxpayer. Vance v. Commissioner,36 T.C. 547, 549 (1961). In the case of divorced parents, the parent having custody of the child generally is entitled under section 152(e)(1) to the dependency exemption. There are two exceptions giving the noncustodial parent the exemption. The first, contained in section 152(e)(2)(A), allows the exemption to the noncustodial *102 parent if he or she contributed at least $600 toward the child's support and the divorce decree provides that he or she may claim the exemption. The other exception for divorced parents is found in section 152(e)(2)(B). That section provides, in part, that a noncustodial parent may be entitled to the dependency exemption if he or she provides at least $1,200 during the calendar year toward each child's support, unless the custodial parent can "clearly establish" that he or she provided more support for the child during that year than the noncustodial parent. For the years 1980 and 1981 both Mr. and Mrs. Wells claimed dependency exemptions for Karen and Debra. In his statutory notices, respondent has disallowed both Mr. and Mrs. Wells the claimed exemptions. In 1982, he also disallowed the dependency exemption claimed by Mrs. Wells for Debra. The 1964 divorce decree awarded custody of the children to Mrs. Wells and she is, therefore, the custodial parent. Based upon the stipulated facts in this case and the testimony and exhibits introduced into evidence at trial, we find that Mr. Wells provided support to Karen and Debra for the years indicated and in the amounts shown as follows: *103 Karen
Debra
1980
$2,575.21
[7]7 $1,499.00
1981
[8] 3,698.00
1,493.00
1982
[9] 1,945.00
[10] 2,178.02
A noncustodial parent who provides $1,200 or more support for the child shall be treated as having provided more than half the support for the child unless the custodial parent clearly establishes that the custodial parent provided, in fact, more for the support of the child during the calendar year than the noncustodial parent. Section 1.152-4(d)(3), Income Tax Regs.Labay v. Commissioner,55 T.C. 6 (1970), *104 affd. per curiam 450 F.2d 280 (5th Cir. 1971). Having thoroughly reviewed the record, we find that Mr. Wells provided more than one half of Karen's and Debra's support during 1980 and 1981 and that he is entitled to claim them as his dependents on his 1980 and 1981 returns. We further find that Mr. Wells provided more than one half of Debra's support during 1982 and that Mrs. Wells is not entitled to claim Debra as a dependent on her 1982 return. (4) Head of Household Status.
Respondent determined that Mrs. Wells was not entitled to file her 1982 return under the head of household rates of section 1(b). Section 2(b) provides that "an individual shall be considered a head of household * * * only if * * * [he] * * * maintains as his home a household which constitutes for such taxable year the principal place of abode * * * of a son, stepson, daughter or stepdaughter * * *." We have previously found that, during each of the years in issue, Debra did not live full-time with either petitioner; she was a full-time college student and lived away from home. We have further found that upon being graduated from college in August, 1982, Debra returned to Mrs. *105 Wells' home for a brief period of time before moving permanently to Augusta, Georgia. Section 1.2-2(c)(1), Income Tax Regs., provides that the taxpayer and the person who qualifies the taxpayer as head of household must occupy the household for the entire taxable year. The regulations also provide, however, that: The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of * * * education * * * shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return. Petitioner bears the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner *106 has not carried her burden on this issue. It is clear that Debra did not live with Mrs. Wells for the entire year of 1982. The evidence shows that she lived away from Mrs. Wells' home until her graduation from college in August 1982. The evidence then shows that she was at Mrs. Wells' home for a brief period before moving permanently to Augusta, Georgia. We also note that Debra's sister, Karen, who lived away from Mrs. Wells' home while a full-time college student, moved permanently to Macon, Georgia, upon being graduated from college in June, 1982. From this record, we do not find it reasonable to assume that Debra would return to live at her mother's home upon being graduated from college, as required by the regulations, supra. Accordingly, the respondent's determination on this issue is sustained. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, except as otherwise indicated.↩
2. These cases were consolidated for trial, briefing and opinion by Order dated November 21, 1985.↩
3. Clyde Wells conceded at trial that he had omitted interest income of $48 on his 1981 return.↩
4. The record does not conclusively establish how long Debra Wells lived at the Carter Road address prior to her move to Augusta, Georgia. Mrs. Wells testified that Debra returned home for "one or two months" before moving to Augusta, Georgia.↩
5. Respondent has conceded that mortgage payments made by Mr. Wells in 1981 and 1982 on the home in which Mrs. Wells lived are not alimony payments and are not includable in her gross income for those years.↩
6. See also Brock v. Commissioner,566 F.2d 947 (5th Cir. 1978); Abramo v. Commissioner,78 T.C. 154↩ (1982).
7. This figure was arrived at by taking the stipulated figure of $1,530.85 and subtracting $31.85 as amounts representing insurance payments not attributable to Debra Wells. ↩
8. The variance between the stipulated figure of $3,518 and $3,698 is based on an unexplained mathematical error in totaling exhibits 14-N(1) through 14-N(23). ↩
9. This figure represents the total of exhibits 24-X(1) through 24-X(7) to which was added exhibit 15-O for a total of $1,945 attributable to checks drawn on Mr. Wells' account payable to Karen Wells, or for her benefit. ↩
10. This figure was arrived at by totaling the amounts found in exhibits 22-V(1) through 22-V(17).↩