## COMMISSIONER OF INTERNAL
## REVENUE *v.* LESTER.

No. 376.   Argued April 25, 1961.—Decided May 22, 1961.

*C. Guy Tadlock* argued the cause for petitioner.   With him on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Rice, Assistant Attorney General Oberdorfer, Melva M. Graney* and *Norman H. Wolfe.*

*Louis Mandel* argued the cause for respondent.   With him on the brief was *Leonard J. Lefkort.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The sole question presented by this suit, in which the Government seeks to recover personal income tax deficiencies, involves the validity of respondent's deductions

from his gross income for the taxable years 1951 and 1952 of the whole of his periodic payments during those years to his divorced wife pursuant to a written agreement entered into by them and approved by the divorce court. The Commissioner claims that language in this agreement providing "[i]n the event that any of the [three] children of the parties hereto shall marry, become emancipated, or die, then the payments herein specified shall . . . be reduced in a sum equal to one-sixth of the payments which would thereafter otherwise accrue" sufficiently identifies one-half of the periodic payments as having been "payable for the support" of the taxpayer's minor children under § 22 (k) of the Internal Revenue Code of 1939 and, therefore, not deductible by him under § 23 (u) of the Code.[1]  The Tax Court approved the Commissioner's disallowance, 32 T. C. 1156, but the Court of Appeals reversed, 279 F. 2d 354, holding that the agreement did not "fix" with requisite clarity any specific amount or portion of the periodic payments as payable for the support of the children and that all sums paid to the wife under the agreement were, therefore, deductible from

---

[1] Section 22 (k) of the Internal Revenue Code of 1939, 56 Stat. 816–817, provided in part that

". . . periodic payments . . . received [by the wife] subsequent to [a decree of divorce] . . . in discharge of . . . a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under . . . a written instrument incident to such divorce . . . shall be includible in the gross income of such wife . . . .  This subsection shall not apply to that part of any such periodic payment *which the terms of the . . . written instrument fix*, in terms of . . . a portion of the payment, as a sum which is payable for the support of minor children of such husband."  (Emphasis added.)

Section 23 (u), 56 Stat. 817, stated in pertinent part that there shall be allowed as a deduction

"[i]n the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year."

respondent's gross income under the alimony provision of § 23 (u). To resolve a conflict among the Courts of Appeals on the question,[2] we granted certiorari. 364 U. S. 890. We have concluded that the Congress intended that, to come within the exception portion of § 22 (k), the agreement providing for the periodic payments must specifically state the amounts or parts thereof allocable to the support of the children. Accordingly, we affirm the judgment of the Court of Appeals.

Prior to 1942, a taxpayer was generally not entitled to deduct from gross income amounts payable to a former spouse as alimony, *Douglas* v. *Willcuts,* 296 U. S. 1 (1935), except in situations in which the divorce decree, the settlement agreement and state law operated as a complete discharge of the liability for support. *Helvering* v. *Fitch,* 309 U. S. 149 (1940). The hearings, Senate debates and the Report of the Ways and Means Committee of the House all indicate that it was the intention of Congress, in enacting § 22 (k) and § 23 (u) of the Code, to eliminate the uncertain and inconsistent tax consequences resulting from the many variations in state law. "[T]he amendments are designed to remove the uncertainty as to the tax consequences of payments made to a divorced spouse . . . ." S. Rep. No. 673, Pt. 1, 77th Cong., 1st Sess. 32. They "will produce uniformity in the treatment of amounts paid . . . regardless of variance in the laws of different States . . . ." H. R. Rep. No. 2333, 77th Cong., 2d Sess. 72. In addition, Congress realized that the "increased surtax rates [3] would intensify" the

---

[2] Both *Metcalf* v. *Commissioner,* 271 F. 2d 288 (C. A. 1st Cir. 1959), and *Eisinger* v. *Commissioner,* 250 F. 2d 303 (C. A. 9th Cir. 1957), have arrived at conclusions contrary to those of the court below.

[3] Sections 22 (k) and 23 (u) were enacted as part of the Revenue Act of 1942 which provided for greatly increased tax revenue to meet the expenses of World War II.

hardship on the husband who, in many cases, "would not have sufficient income left after paying alimony to meet his income tax obligations," H. R. Rep. No. 2333, 77th Cong., 2d Sess. 46, and perhaps also that, on the other hand, the wife, generally being in a lower income tax bracket than the husband, could more easily protect herself in the agreement and in the final analysis receive a larger net payment from the husband if he could deduct the gross payment from his income.

The first version of § 22 (k) was proposed by the Senate as an amendment to the Revenue Act of 1941. : The sums going to child support were to be includible in the husband's gross income only if the amount thereof was "specifically designated as a sum payable for the support of minor children of the spouses." H. R. 5417, 77th Cong., 1st Sess., § 117. The proposed amendment thus drew a distinction between a case in which the amount for child support was "specifically designated" in the agreement, and one in which there was no such designation. In the latter event, "the whole of such amounts are includible in the income of the wife . . . ." S. Rep. No. 673, Pt. 1, 77th Cong., 1st Sess. 35. Action on the bill was deferred by the conference committee[4] and hearings on the measure were again held the following year. The subsequent Report of the Senate Finance Committee on § 22 (k) carried forward the term "specifically designated," used in the 1941 Report (No. 673), with this observation:

> "If, however, the periodic payments . . . are received by the wife for the support and maintenance of herself and of minor children of the husband without such specific designation of the portion for the support of such children, then the whole of such

---

[4] H. R. Rep. No. 1203, 77th Cong., 1st Sess. 11.

amounts is includible in the income of the wife as provided in section 22 (k) . . . ." S. Rep. No. 1631, 77th Cong., 2d Sess. 86.

As finally enacted in 1942, the Congress used the word "fix" instead of the term "specifically designated," but the change was explained in the Senate hearings as "a little more streamlined language." Hearings before Senate Committee on Finance on H. R. 7378, 77th Cong., 2d Sess. 48. As the Office of the Legislative Counsel reported to the Senate Committee:

"If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife . . . . If, however, that amount paid the wife includes the support of children, *but no amount is specified for the support of the children,* the entire amount goes into the income of the wife . . . ." *Ibid.* (Italics supplied.)

This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress.

One of the basic precepts of the income tax law is that "[t]he income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss* v. *Bowers,* 281 U. S. 376, 378 (1930).

Under the type of agreement here, the wife is free to spend the monies paid under the agreement as she sees fit. "The power to dispose of income is the equivalent of ownership of it." *Helvering* v. *Horst,* 311 U. S. 112, 118 (1940). Including the entire payments in the wife's gross income under such circumstances, therefore, comports with the underlying philosophy of the Code. And, as we have frequently stated, the Code must be given "as great an internal symmetry and consistency as its words permit." *United States* v. *Olympic Radio & Television,* 349 U. S. 232, 236 (1955).

It does not appear that the Congress was concerned with the perhaps restricted uses of unspecified child-support payments permitted the wife by state law when it made those sums includible within the wife's alimony income. Its concern was with a revenue measure and with the specificity, for income tax purposes, of the amount payable under the terms of the written agreement for support of the children. Therefore, in construing that revenue act, we too are unconcerned with the variant legal obligations, if any, which such an agreement, by construction of its nonspecific provisions under local rules, imposes upon the wife to use a certain portion of the payments solely for the support of the children. The Code merely affords the husband a deduction for any portion of such payment not specifically earmarked in the agreement as payable for the support of the children.

As we read § 22 (k), the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. Here the agreement does not so specifically provide. On the contrary, it calls merely for the payment of certain monies to

the wife for the support of herself and the children. The Commissioner makes much of the fact that the agreement provides that as, if, and when any one of the children married, became emancipated or died the total payment would be reduced by one-sixth, saying that this provision did "fix" one-half (one-sixth multiplied by three, the number of children) of the total payment as payable for the support of the children. However, the agreement also pretermitted the entire payment in the event of the wife's remarriage and it is as consistent to say that this provision had just the opposite effect. It was just such uncertainty in tax consequences that the Congress intended to and, we believe, did eliminate when it said that the child-support payments should be "specifically designated" or, as the section finally directed, "fixed." It does not say that "a sufficiently clear purpose" on the part of the parties would satisfy. It says that the written instrument must "fix" that amount or "portion of the payment" which is to go to the support of the children.

The Commissioner contends that administrative interpretation has been consistently to the contrary. It appears, however, that there was such a contrariety of opinion among the Courts of Appeals that the Commissioner was obliged as late as 1959 to issue a Revenue Ruling which stated that the Service would follow the rationale of *Eisinger* v. *Commissioner*, 250 F. 2d 303 (C. A. 9th Cir. 1957),[5] but that *Weil* v. *Commissioner*, 240 F. 2d 584

---

[5] The court there approved the rule that "when the settlement agreement, read as a whole, discloses that the parties have earmarked or designated . . . the payments to be made, one part to be payable for alimony, and another part to be payable for the support of children, with sufficient certainty and specificity to readily determine which is which, without reference to contingencies which may never come into being, then the 'part of any periodic payment' has been fixed 'by the terms of the decree or written instrument' . . . ." 250 F. 2d, at 308.

(C. A. 2d Cir. 1957),[6] would be followed "in cases involving similar facts and circumstances." Rev. Rul. 59–93, 1959–1 Cum. Bull. 22, 23.

All of these considerations lead to the conclusion that if there is to be certainty in the tax consequences of such agreements the allocations to child support made therein must be "specifically designated" and not left to determination by inference or conjecture. We believe that the Congress has so demanded in § 22 (k). After all, the parties may for tax purposes act as their best interests dictate, provided, as that section requires, their action be clear and specific. Certainly the Congress has required no more and expects no less.

*Affirmed.*

MR. JUSTICE DOUGLAS, concurring.

While I join the opinion of the Court, I add a few words. In an early income tax case, Mr. Justice Holmes said "Men must turn square corners when they deal with the Government." *Rock Island, A. & L. R. Co.* v. *United States,* 254 U. S. 141, 143. The revenue laws have become so complicated and intricate that I think the Government in moving against the citizen should also turn square corners. The Act, 1939 I. R. C. § 22 (k), makes taxable to the husband that part of alimony payments "which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum" payable for support of minor children.

I agree with the Court that this agreement did not "fix" any such amount. To be sure, an amount payable in

---

[6] In that case the agreement provided for reductions only in the event the divorced wife remarried. The court stated that "[t]he fortuitous or incidental mention of a figure in a provision meant to be inoperative, unless some more or less probable future event occurs, will not suffice to shift the tax burden from the wife to the husband." 240 F. 2d, at 588.

support of minor children may be inferred from the *proviso* that one-sixth of the payment shall no longer be due, if the children marry, become emancipated, or die. But Congress in enacting this law realized that some portion of alimony taxable to the wife might be used for support of the children, as the opinion of the Court makes clear.

The present agreement makes no specific designation of the portion that is intended for the support of the children. It is not enough to say that the sum can be computed. Congress drew a clear line when it used the word "fix." Resort to litigation, rather than to Congress, for a change in the law is too often the temptation of government which has a longer purse and more endurance than any taxpayer.