**Elizabeth Mae HARBIN**

v.

**UNITED STATES of America.**

**Civ. A. No. 6624.**

United States District Court
E. D. Tennessee, N. D.

Oct. 10, 1969.

Thearon F. Chandler, Knoxville, Tenn., for plaintiff.

John L. Bowers, U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Elizabeth Mae Harbin, hereinafter sometimes referred to as plaintiff, sued the United States of America for a refund of income taxes in the amount of $262.78, with interest that increases the amount to $298.47 as of the date the complaint was filed.

Plaintiff filed for a divorce on August 31, 1964, and on December 21, 1964, the Domestic Relations Court for Knox County by decree approved the following stipulations by the parties:

"The Court further found that the complainant and the defendant had reached a property settlement which is as follows: That the complainant is to have all the household furniture and furnishings located at 2805 Scottish Pike, Knoxville, Tennessee, consisting of the following: 1 living room suite; 2 bed room suites; 1 dining room suite; electric appliances; stove and refrigerator; piano, deep freeze; roll away bed; dishes; silverware; cutlery; linens; bedding; other odds and ends of furniture; 1 television set, RCA; one record player and records; and also one 1958 Buick automobile, two door supra, gray and white; also the defendant will pay to the Park National Bank the sum of approximately $105.00, which is owed

on a note signed by complainant and defendant.

"The parties have further agreed that the complainant will pay for the household expenses incident to the children, including food, clothing and all other expenses, except medical; the complainant will pay current telephone and light bills and will pay the the same as they become due each month.

"It is further agreed that the complainant will have the care, custody and control of the two children, Mary Elizabeth Harbin, and Gordon Hugh Harbin and that the defendant will have visitation rights as follows: Defendant's mother will receive the children at complainant's home at 4:30 P.M. every other Friday, take them to her home, where the defendant lives, and that the defendant will have the children until 4:30 P.M. the following Sunday of said week, at which time, the defendant's mother will take the children back to complainant's home. The said visitation rights will begin on December 25, 1964. It is further agreed that the complainant will pay the monthly instalment on a certain loan secured by a mortgage on the house at 2805 Scottish Pike, Knoxville, Tennessee, amounting to $39.00 per month.

"It is also further agreed by the parties that the defendant will pay the complainant the sum of $30.00 per week beginning on the 26th day of December, 1964, and continuing each and every week thereafter until further orders of the Court. It was also agreed between the parties that the complainant will cancel the Blue Cross Insurance she is now carrying on the two minor children and the defendant at Standard Knitting Mills, and that the defendant will immediately procur the same coverage on the two children through Blue Cross.

"That the complainant will continue to pay the $39.00 per month on the house at 2805 Scottish Pike, Knoxville, Tennessee, and catch up the payment due for December, in the amount of $39.00, and that she may live there until she remarries; that the defendant will give the title to the 1958 Buick mentioned above, properly signed along with a certificate of registration over to complainant, and she will thereupon deliver to him the license plates of same and insurance upon the car."

Pursuant to the agreement of the parties and the order of the Court, Mr. Harbin, the defendant in the divorce case, made five separate payments of $30.00 each by checks, each check having written thereon "For child support for Gordon and Mary Elizabeth for the week of Jan. 3–9, 1965." The following four checks were identical except for the period of time covered.

After the last of the five checks was delivered to plaintiff, the husband then began to and did write weekly checks of $30.00 each payable to the plaintiff with the following notations: "For alimony for the week of February 21–27, 1965." This was done presumably by Mr. Harbin so that he could make income tax deductions for such payments. Under the applicable law, if the payments were for the wife, he would be allowed income tax deductions, but if for the children, income tax deductions were not permissible for him. If the payments were made to the wife, the wife was required to include them as earnings in her income tax report and pay taxes thereon.

Plaintiff's ex-husband paid $1,560.00 during the year 1965 under the circumstances above shown. She did not report any of the amount on her 1965 income tax return and as a result of an audit by the Commissioner of Internal Revenue, such amount was included in her income and she was assessed accordingly on May 6, 1966.

The final decree of the State Court was modified on August 10, 1966, to give custody of plaintiff's son to her ex-husband and to continue her custody of the minor daughter. This order stated in part: " . . . the court orders that so

long as the condition exists whereby the minor child refuses to visit with the petitioner, Hugh Lee Harbin, no *support payments* are to be required." (Emphasis added.)

Subsequently, plaintiff requested the State Court

". . . to clarify, modify or define certain payments ordered to be made by the original defendant, Hugh Lee Harbin, wherein in the final decree granting the parties an absolute divorce, the defendant was ordered to pay complainant Thirty ($30.00) Dollars per week."

Circuit Judge T. Edward Cole entered an order on August 8, 1968, the pertinent part of which is as follows:

"The Court, after reading the motion and reviewing the entire file in the cause, announced that the final decree and the entering of subsequent decrees in the cause, clearly reflect the finding of the Court as to what the payments were for, and the Court is powerless to further interpret said findings."

Testifying orally over objection of Government counsel, Judge Cole restated what he wrote in the order. In effect, he said that it was his interpretation of the decree that the $30.00 weekly payments were solely for the children. Among the reasons given for such interpretation was that under present-day prices, it would be unreasonable to believe that a court would fix such a small amount of $30.00 a week for the maintenance of both the wife and two children. He also stated that reading the decree as a whole, particularly the paragraphs hereinbefore quoted, that the only reasonable conclusion that could be reached is that the $30.00 weekly payments were for the children alone.

Judge Richard Douglass, Domestic Relations Judge of Knox County and the one who rendered the decree, also testified over objection of Government counsel. His testimony was similar to that of Judge Cole. In addition, he fortified his conclusion that the $30.00 weekly payments were for the children alone by introducing original sheets from his courtroom calendar on which he made the following notation in the Harbin case: "Final decree, custody, support, property, alimony and visitation are approved." He stated that these were directions from him to the attorneys who were to draft the decree of what should go into said decree. He further stated that "custody" referred to the children; that "support" also referred solely to the children; "property" referred to the items of personal property awarded to Mrs. Harbin; "alimony" referred to the items awarded Mrs. Harbin exclusive of money. In that connection, he stated, in effect, that the word "support" when used, always meant support for the children and this language was well known to the domestic relations courts and to the lawyers who practiced in them. He further stated that the word "alimony" had reference solely to an award to the wife, in this case, items of personal property hereinbefore mentioned.

Judge Joe Haynes, who substituted for Judge Douglass and who issued the decree changing the custody of the son from plaintiff to her former husband, Hugh Lee Harbin, stated that the decree rendered by Judge Douglass showed plaintiff sought the $30.00 payments for the support of the children solely. Attorneys Frank Flynn, Sr. and Boyd Cox, who appeared as attorneys in the divorce proceedings at one time or another, each stated that the $30.00 weekly payments were for the children solely. Thearon F. Chandler, attorney for the plaintiff in the present case and who represented her throughout the original proceedings, stated that at no time in his talks with her as an attorney did she ever discuss alimony for herself, but to the contrary stated that she was not seeking alimony for herself.

Plaintiff testified unequivocally that she never sought alimony in the divorce proceedings and that the weekly payments were for the sole benefit of the

children. She is corroborated in her testimony in a portion of her original bill, which reads as follows:

"Complainant believes that she is a fit and proper person to have the care and custody of the two (2) minor children and asks the Court to award her care, custody and control of them and the reasonable amount of thirty dollars ($30.00) per week as child support."

She is likewise corroborated by pertinent parts of the prayer in that bill, which are as follows:

"2. That upon the hearing of this cause she be granted an absolute divorce from the defendant, and/or an bed and board divorce in the discretion of the Court, and awarded the exclusive care, custody and control of the children, Mary Elizabeth and Gordon Hugh and the reasonable sum of thirty dollars ($30.00) per week as child support.

"3. That she be awarded the household furniture and furnishings and the automobile as alimony, and that the defendant be ordered to pay off the note now owed to the Park National Bank."

The following sections of the Internal Revenue Code of 1954 determine the rights of the parties:

"§ 71. Alimony and separate maintenance payments.

"(a) *General rule.—*

(1) *Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

(2) *Written separation agreement.*—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

(3) *Decree for support.*—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

"(b) *Payments to support minor children.*—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support

shall be considered a payment for such support." (26 U.S.C. Sec. 71, 1964 Ed.)

The treatment of alimony payments, says the Government, has been a recurring problem to the Legislators in drafting the tax laws. The 1954 Internal Revenue Code permits the husband to deduct alimony payments and to tax them to the wife. Child support payments are not deductible and remain taxable to the husband.

As previously indicated, plaintiff contends that the $30.00 weekly payments were for child support and that they are excluded from her income under Section 71(b) heretofore quoted.

The Government relies upon the case of Commissioner v. Lester, 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306 to support its contention that the wife cannot claim that these payments are excluded from her earnings because they were not "definitely fixed" for the children in the decree of the State Court.

■ We do not agree. The Lester case may be differentiated on its facts from our case because the Court in the Lester case was dealing with a situation where the written instrument providing for the periodic payments to the wife and the children did not designate the amounts or part thereof allocable to the support of the children but left such amounts to determination by reference and conjecture. In our case, it is clear, in light of the testimony of the judges and the lawyers who participated in the divorce case, that the $30.00 weekly payments were for support (meaning support of the children) and not alimony (alimony always refers to payments to the wife, according to Judge Douglass) for the wife.

In the opinion of the Court, and it concludes, that the Court decree signed by Judge Douglass definitely fixed the $30.00 weekly payments for the exclusive support of the children and plaintiff is entitled to a refund. See Johnson v. Commissioner, 45 T.C. 530; Var-gason v. Commissioner, 22 T.C. 100; Sklar v. Commissioner, 21 T.C. 349.

The other case relied upon by the Government is that of Deitsch v. Commissioner, 6 Cir., 249 F.2d 534, The decision in this case was based upon the reasoning in the Lester case, supra, but was decided before the Lester case. The instrument in that case provided for the payment by the husband to the wife of a monthly sum for her support and maintenance and for the support, maintenance and education of two minor children. It did not fix any part of such sum as payable for the support of the minor children. Thus it is clear that the Court was dealing with a situation where the award was made to both the wife and the children without any definite apportionment to either. This case is likewise distinguishable from our present case for the same reason that the Lester case was not decisive.

■ Mention should be made to the Government's objections to certain parts of the testimony of Judges Cole, Douglass and Haynes and Attorneys Flynn and Chandler. Final rulings on the objections were reserved until a decision on the merits.

The Court has given further consideration to the questions raised in the objections and has concluded that the evidence admitted was competent to show the background of the divorce suit, the circumstances leading up to and the granting of the divorce, the reasons for the Court granting the support for the children and the meaning of the word "support" and the word "alimony" as understood by the Judges of the Domestic Relations Court and the lawyers who practice in that Court.

■ The Court concludes that the $30.00 weekly payments were fixed and designated in the divorce decree as child support and the law requires that they not be included in plaintiff's gross income for income tax purposes.

In conformity with the views herein expressed, it is the judgment of the

Court that the plaintiff have and recover from the Government as an income tax refund the sum of $298.47, plus interest from date.