PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12993
Non-Argument Calendar
_____

T. C. Docket No. 19597-97

FOREST R. PRESTON,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from a Decision of the United States Tax Court

_____

**(April 20, 2000)**

Before TJOFLAT and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Taxpayer Forest R. Preston appeals the judgment of the tax court that certain

payments made by Preston were not deductible as alimony under § 215 of the Internal

Revenue Code. Among other things, Preston argues that payments to his former spouse and others for his children's expenses were deductible as alimony based upon *Commissioner v. Lester*, 366 U.S. 299 (1961). We affirm the tax court's determination that these payments were child support under I.R.C. § 71(c) and, as a result, nondeductible to Preston under § 215. As to Preston's other arguments, we affirm in part and vacate and remand in part.

I.R.C. § 215[1] permits a taxpayer to deduct from gross income payments made to a spouse under a divorce or separation instrument that are includible in the receiving spouse's gross income as alimony pursuant to I.R.C. § 71[2]. Section 71(c),

---

[1]I.R.C. § 215 (a) and (b) states:

 (a) General rule.–In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

 (b) Alimony or separate maintenance payments defined.–For purposes of this section, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71.

[2]I.R.C. § 71(a)-(c)(1) states:

 (a) General rule.–Gross income includes amounts received as alimony or separate maintenance payments.
 (b) Alimony or separate maintenance payments defined.–For purposes of this section–
        (1) In general.–The term "alimony or separate maintenance payment" means any payment in cash if–
            (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
            (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and

however, excludes from alimony "that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse."

Forest Preston and Diane Sowell were married in 1974 and during their marriage had two children, Ashley and Barron. In March 1992, Sowell filed a petition for divorce. On April 3, 1992, the Superior Court of Muscogee County, Georgia, issued a temporary order, which stated in relevant part:

---

not allowable as a deduction under section 215,
　(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
　(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
　(2) Divorce or separation instrument.–The term "divorce or separation instrument" means–
　　(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,
　　(B) a written separation agreement, or
　　(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.
　(C) Payments to support children.--
　　(1) In general.–Subsection (a) shall not apply to that part of any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse.

3

[Preston] shall pay for the support of [Sowell] and the two (2) minor children of the parties and the following household and family expenses until further Order of the Court:

. . .

(d) The medical and dental expenses of [Sowell] and the children and prescription drug expenses;

(e) The children's school tuition, supplies and activities;

(f) The cost of clothing for [Sowell] and the children (the amount to be agreed upon by [Sowell] and [Preston]; and if the parties are not able to agree, the matter shall be brought before the Court).

In addition to making the payments above enumerated, [Preston] shall pay to [Sowell] the sum of ONE THOUSAND DOLLARS ($1,000.00) per month, commencing April 1, 1992, with a payment of FIVE HUNDRED DOLLARS ($500.00), and the payment of an additional FIVE HUNDRED DOLLARS ($500.00) on the 15th of April, 1992, and continuing with like payments during each calendar month thereafter until further Order of the Court . . . .

On September 9, 1993, the Superior Court issued a final order granting the parties a divorce, which supplanted the temporary order. The final order required, among other things, that Preston pay his son Barron's private school tuition for the 1993-94 school year and his daughter Ashley's car insurance until she reached 18 years of age. It also required Preston to pay Sowell an additional $1600 per month as "child support."

In his income tax returns for the years 1992 and 1993, Preston claimed alimony deductions for payments made to Sowell and others for expenses of the children pursuant to the temporary order. For instance, in 1992, he deducted, among other payments, a $406 payment made to "Dr. Hudson" for "doctor bill–children," a $136

4

payment to Sowell for "children's dental bill," and a $1,109 payment to "Pacelli High" for "Ashley's tuition." Additionally, in his 1993 and 1994 returns, Preston claimed alimony deductions for amounts paid pursuant to the final order for Barron's tuition and Ashley's car insurance. He did not claim alimony deductions for any amounts paid pursuant to the final order's directive to pay $1600 per month in "child support." The tax court denied the deductions, ruling the payments were nondeductible child support, not alimony.

The question is whether, under § 71(c), the payments were "fix[ed] (in terms of an amount of money or a part of the payment)" by the temporary or final order, as applicable, as sums "payable for the support of children." Preston relies on *Commissioner v. Lester*, 366 U.S. 299 (1961) (*overruled by* 26 U.S.C. § 71(c)(2)), for the argument that, in essence, the payments were not child support under § 71(c) because the temporary or final order did not fix a *dollar amount* for the payments. In *Lester*, the divorce decree provided for a periodic, fixed payment to the taxpayer's former spouse and children, which would be reduced by a percentage upon the death, marriage or emancipation of the minor children. The Supreme Court construed the entire amount of the payments to be alimony income to the receiving spouse and deductible to the taxpayer, indicating that the divorce decree "must expressly specify or 'fix' a sum certain or percentage of the payment for child support before any of the

5

payment is excluded from the [receiving spouse's] income." The Court reasoned that the payments were properly taxable to the spouse because she had discretion to spend them as she desired. *See Lester*, 366 U.S. at 303-06. Although the ultimate holding of *Lester* was overruled by 26 U.S.C. § 71(c)(2), which treats as child support the payment amounts that would be reduced on the happening of certain contingencies relating to the children, the reasoning in *Lester* cited by Preston remains persuasive.

Preston's payments, however, were not general support payments as in *Lester*. Rather, the payments were earmarked by the temporary or final order for the specific expenses of the children as they arose. The reasoning underlying Lester–that the receiving spouse must report income where he or she has discretion in spending the payments received–is inapplicable. *See Sperling v. Commissioner*, 726 F.2d 948, 951-53 (2nd Cir. 1984) (holding that *Lester* applies only to general payments between spouses, not to separate payments "earmarked for specific, [child] support-related purposes").

Under § 71(c), the child support component of each of Preston's payments was indeed "fix[ed] . . . in terms of a part of the payment" by the temporary or final order. Each of the individual payments of the children's expenses was payable exclusively for the support of the children. Therefore, the child support component of each payment was fixed at *100%* by the applicable order. Consequently, under § 71(c), the

6

payments did not constitute income to Sowell, and Preston was not entitled to deduct them from his income pursuant to § 215. We affirm the tax court's denial of the claimed deductions.

Likewise, we affirm the tax court's judgment that the following payments by Preston were not deductible as alimony under I.R.C. § 215:

(1) $2,048 in 1994 on Sowell's life insurance policy. The payment was made to pay off a loan of unspecified origin against the policy. It was not a premium payment, which would be deductible under some circumstances. *See Rev. Rul.* 70-218, 1970-1 C.B. 19.

(2) $1,647 in 1994 for Sowell's dental bill. The final divorce decree did not require that Preston pay this bill.

(3) $2,204 and $566 in 1992 and 1993, respectively, for Sowell's car expenses. Cash payments to a third party on behalf of a spouse qualify as alimony, assuming all other requirements are satisfied. *See* I.R.C. § 71(b)(1); Treas. Reg. § 1.71-1T(b), Q&A #6. Preston, however, has not demonstrated that he paid cash to Preston Oil on behalf of Sowell for her car expenses.

(4) The payments ($5,000 in 1993 and $12,000 in 1994) stemming from the award of $180,000 of "alimony" in the final order. Under Georgia law, Preston would still be liable for these payments in the event of Sowell's death. *See* I.R.C. §

7

71(b)(1)(D) (excluding from the definition of "alimony" payments not terminated by the death of the payee); *Winokur v. Winokur*, 365 S.E.2d 94, 96 (Ga. 1988).

(5) The payments for Sowell's legal fees pursuant to the final order. The payments would not terminate in the event of Sowell's death. *See* I.R.C. § 71(b)(1)(D); *Winokur*, 365 S.E.2d at 96.

(6) Payments to finance Sowell's car (totaling $669 in 1993 and $3,447 in 1994). The payments would survive Sowell's death. *See* I.R.C. § 71(b)(1)(D); *Stone v. Stone*, 330 S.E.2d 887, 888-89 (Ga. 1995).

The tax court committed reversible error, however, in overlooking the government's concession that certain payments for the support of Sowell made pursuant to the temporary order were deductible. Under Georgia law, a taxpayer's liability to make payments under a temporary order entered in a divorce proceeding ceases upon the death of the spouse, and therefore are not disqualified by I.R.C. § 71(b)(1)(D) from being considered alimony. *See Butler v. Hicks*, 189 S.E.2d 416, 419 (Ga. 1972). The government conceded that the following payments pursuant to the temporary order were deductible:

(1) Monthly payments to Sowell totaling $10,000 in 1992 and $7,000 in 1993;

(2) Utility bills for the family residence, namely, for electricity ($2,125 in 1992 and $2,492 in 1993), water ($524 in 1992 and $478 in 1993), the telephone ($783 in

8

1992 and $1,384 in 1993), gas ($470 in 1992 and $788 in 1993), and cable television ($514 in 1992 and $403 in 1993);

(3) A $426 doctor's bill in 1993 for the spouse;

(4) One half of the payments for pest control ($188 in 1992 and $255 in 1993), lawn care ($343 in 1992 and $315 in 1993) and homeowner's insurance ($274 in 1992 and $60 in 1993) for the family residence.

(5) Payments for health insurance for Sowell and the children ($3,133 in 1992 and $2,222 in 1993).

Accordingly, on remand, the tax court should modify its decision to reflect the government's concessions.

Finally, Preston questions the government's tactic of taking an inconsistent position in litigation against Sowell with respect to the characterization of the payments. The government, however, is permitted to assert inconsistent positions against taxpayers on different sides of a transaction to protect the treasury against "whipsaw" by taxpayers who themselves assert inconsistent positions. *See Centel Communications Co. v. Commissioner*, 920 F.2d 1335, 1339-40 (7th Cir. 1990). There is no indication in the record that, in either litigation, the government is doing anything other than ensuring that the income at issue will not elude taxation entirely. There is no indication that the government has already collected tax from Sowell on

9

the payments it now argues are nondeductible to Preston. Indeed, although the government does not deny that it is asserting an inconsistent position in the litigation against Sowell, it represents "[t]his is not to say that the IRS will seek to collect and retain taxes from taxpayers on both sides of the transaction." In view of the government's representation, we find no merit in Preston's argument.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.