T.C. Summary Opinion 2005-119

UNITED STATES TAX COURT

GERALYN M. RANDICH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

STEVEN M. RANDICH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 2641-03S, 21861-03S.     Filed August 11, 2005.

Geralyn M. and Steven M. Randich, pro sese.

Sean R. Gannon, for respondent.

GOLDBERG, Special Trial Judge:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time each petition was filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to

the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In separate notices of deficiency, respondent determined that petitioners are liable for the following deficiencies in Federal income taxes:

Docket No. 2641-03S          Geralyn M. Randich

| Taxable Year | Deficiency |
|---|---|
| 2000 | $6,091 |

Docket No. 21861-03S          Steven M. Randich

| Taxable Year | Deficiency |
|---|---|
| 2000 | $6,683 |

The issues for decision are:  (1) Whether $28,800 received by petitioner Geralyn M. Randich pursuant to a judgment for dissolution of marriage is includable in her income under section 71 as alimony income; and (2) whether petitioner Steven M. Randich may deduct as alimony, pursuant to section 215, $28,800 that he paid to petitioner Geralyn M. Randich pursuant to the judgment for dissolution of marriage.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the

respective petitions were filed, petitioners resided in New Lenox, Illinois.

During taxable year 2000, petitioner Geralyn M. Randich (Ms. Randich) was gainfully employed in "student services". For the year in issue Ms. Randich reported wage income of $46,549. During taxable year 2000, petitioner Steven M. Randich (Mr. Randich) was gainfully employed as a union pipefitter. For the year in issue Mr. Randich reported wage income of $62,524 from his employment with the union and some part-time jobs.

Petitioners were married on March 6, 1985. During their relationship, petitioners, together, had four children: CR, born in 1982; LR, born in 1983; SR, born in 1986; and AR, born in 1988.

Before March 25, 1998, Mr. Randich filed a petition with the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois (circuit court), to commence divorce proceedings.[1] On March 25, 1998, an order for temporary maintenance and support (temporary order) was entered by the circuit court with respect to petitioners' divorce case. The temporary order provides, in pertinent part:

---

[1]The caption of this matter was: In re: The Marriage of Steven M. Randich, Plaintiff and Geralyn M. Randich, Defendant, Case No. 98 D 0286.

It is ordered:
(1) * * * [Mr. Randich] shall pay by agreement * * * for
unallocated temporary maintenance and support, by Order for
Support, the sum of $2,350 per month.

Petitioners were legally divorced in 2000. A judgment for

dissolution of marriage pertaining to petitioners' divorce was

entered in the circuit court on April 12, 2000. The judgment for

dissolution of marriage provides, in pertinent part:

The Respondent [Ms. Randich] shall be the residential
custodian of the three children of the Parties, * * * [CR],
[AR], and * * * [SR].

         *       *       *       *       *       *       *

IT IS HEREBY ORDERED:
A.   CUSTODY OF * * * [LR]:  The custody of minor child * * *
     [LR] is at issue in this cause

     The Court considered the criteria set forth in Section
602 of the Illinois Marriage and Dissolution of Marriage
Act.  The Court acknowledges that both parents wish to have
custody of the child.  The Court conducted an in camera
interview of the child and her siblings and took into
consideration * * * [LR's] request to remain with her Father
[Mr. Randich].  The Court further considered the the [sic]
relationship and interaction of * * * [LR] with her siblings
and her parents.  The Court finds that the minor children
get along with each other very well and they love and care
for each other.

     The Court considered the relationship between the
parents and finds that the Mother was the primary care giver
for a great period of time and was * * * [LR's] care giver
until September, 1999.  * * * [LR] has ended up residing
with her Father as a result of her running away a couple of
times and she has lived with him since September, 1999.

         *       *       *       *       *       *       *

     Therefore, after weighing all the considerations, it is
in the best interest of the minor child * * * [LR] that she
be placed in the custody of her Mother [Ms. Randich].

* * * * * * *

Respondent [Ms. Randich] is awarded unallocated family support in the amount of $1,200 per paycheck. Said unallocated family support shall commence immediately upon entry of the Judgment for Dissolution and shall be reviewable at the end of two years. Petitioner's [Mr. Randich's] obligation to pay unallocated family support terminates upon Respondent's [Ms. Randich's] death, her remarriage or cohabitation with another person on a resident, continuing conjugal basis. Respondent [Ms. Randich] shall be entitled to claim the children as her tax exemptions as long as she is receiving unallocated family support. Thereafter, the issue of tax exemptions shall be presented to the Court.

On April 12, 2000, a separate order for the modification of maintenance and support was entered by the circuit court with respect to petitioners' divorce case. This order for the modification of maintenance and support gave credit to Mr. Randich for the sum of $376 to offset an obligation for a joint furnace bill and left a balance of $424. This offset was the result of petitioners' daughter, LR, staying with Mr. Randich for several months. The offset was to compensate for an amount previously provided to Ms. Randich from Mr. Randich for the support of their daughter, LR, during these months in which LR was supposed to be residing with Ms. Randich.

On or about September 2000, Mr. Randich filed a motion for modification of support with the circuit court. The motion for modification of support states, in pertinent part:

3. That pursuant to the Judgment [for Dissolution of Marriage] Petitioner [Mr. Randich] was ordered to pay Respondent [Ms. Randich] the sum of $1,200 per paycheck, equivalent to $2,400 per month as unallocated support.

4. That subsequent to the entry of the Judgment For Dissolution Of Marriage there has been a substantial change of circumstances in:

A. That the eldest child * * * [CR] is emancipated.

B. That there has been a change of custody from Respondent [Ms. Randich] to Petitioner [Mr. Randich] as to the minor child * * * [LR] pursuant to an Order entered July 20, 2000.

WHEREFORE, Petitioner, [Mr. Randich] and by his attorney, BRUCE D. FALK, respectfully request this Honorable Court as follows:

A. For an Order modifying the unallocated support obligation commensurate with the change of circumstances of the parties.

D. For such other and further relief as the Court may deem appropriate.

On March 5, 2001, an order relating to the September 2000 motion for modification of support was entered by the circuit court. In this order, the circuit court found that the "change of custody of minor child * * * [LR] constitutes a change of circumstances regarding support". However, the circuit court did not modify the unallocated family support in this order.

On March 14, 2001, Mr. Randich filed with the circuit court a letter addressed to the judge presiding over petitioners' divorce case and a brief and argument on behalf of petitioner Steven Randich in support of the September 2000 motion for modification of support. The brief states, in pertinent part:

Petitioner [Mr. Randich] has filed a motion for modification of child support. Respondent [Ms. Randich] has filed a motion concerning payment of college expenses. The

underlying factual situation involved in this case is that the eldest child attends college, the next eldest resides with Petitioner [Mr. Randich] and that the two youngest reside with Respondent [Ms. Randich].

The Court has ordered that the Petitioner [Mr. Randich] pay to Respondent [Ms. Randich] one-half of the loan obligation she incurred on behalf of the minor child * * * [CR] for college expenses.  It should be noted that the listed college expenses for the child include all costs associated with education, being not only room, board, tuition, and fees but also transportation, and living expenses.  Respondent's [Ms. Randich's] loans are based upon a cost of attendance for the minor child at Illinois State University not merely the cost of room, board, and tuition. It is Petitioner's [Mr. Randich's] position that since by assuming one-half of the parental cost for the child's attendance at college as opposed to one-half of the costs merely for tuition, room, and board that Petitioner [Mr. Randich] should no longer have to pay any additional expenses on behalf of the minor child.  Petitioner [Mr. Randich] further notes that he still maintains health insurance for the benefit of the child and that Respondent [Ms. Randich] has submitted no specific expenses for the child other than those associated with attendance at college.

*     *     *     *     *     *     *

In summary it is Petitioner's [Mr. Randich's] position that child support pursuant to the statutory guidelines can include only three children since the eldest is now emancipated and attending college.  It is within the Trial Court's discretion to order the monies paid for education expenses for the eldest child.  Since the educational expenses sought by Respondent [Ms. Randich] included living expenses for which the parties are equally sharing the costs Petitioner [Mr. Randich] requests that no further support be ordered concerning the eldest child.

As to the remaining three children, considering the split-custody situation and the fact that both parties are employed on a full-time basis Petitioner [Mr. Randich] requests that the award be based on Petitioner [Mr. Randich] paying 25% of his net income to Respondent [Ms. Randich] after reducing that amount by 20% of Respondent's [Ms. Randich's] net income that would be paid to Petitioner [Mr. Randich].  * * *

On April 3, 2001, Ms. Randich filed with the circuit court a response to brief and argument on behalf of petitioner Steven Randich. The response states, in pertinent part:

> In response to Mr. Falk's (Mr. Randich's attorney) petition for modification of child support, I must first address Mr. Falk's statement in his brief, that "the listed college expenses for the child include all costs associated with education, being not only room, board, tuition, and fees but also transportation, and living expenses." Your Honor, this assertion is false. I am including a copy of Illinois State University's "Award Letter" from the Financial Aid Office, which clearly states that the student's financial aid package is based on the ACADEMIC YEAR at the university. Also, the financial package is, to quote Financial Aid, "based on tuition and fees and on-campus room and board costs set by the University's Board of Trustees". The Financial Aid Office explains further regarding OFF-CAMPUS students, stating that the cost of attendance is based on "off-campus room and board, book, transportation and miscellaneous costs determined from a survey of average student expenses and adjusted for class standing, living arrangement and (if appropriate) family size." * * * In any case, * * * [CR] is a full-time, on-campus student.
>
> The second crucial fact to note is that the Academic Year at ISU began August 21, 2000 and will end May 11, 2001. This is approximately 8½ months. It must also be noted that there is a 1 week "Fall Break"; and 5 week Christmas Break; which brings the school year down to a total of approximately 7 months in length. This does not count the numerous weekends that * * * [CR] returns home. Therefore, you can see that my son is indeed NOT emancipated and still needs a home and support for the 5 months remaining in the year (again not counting the weekends he is at home). * * *
>
>        *     *     *     *     *     *     *
>
> It is my position, Your Honor, that the educational expenses most certainly do NOT include living expenses for my eldest child, * * * [CR], and that his father should continue to contribute to his support for the time of approximately 5 months and also the numerous weekends that * * * [CR] resides at his home with me and his siblings.

The next issue which the Court must address is the issue of the change of support which is currently paid to me for our second child, * * * [LR], who is currently 17 years old and will turn 18 years of age in 3 and one-half months. First, I make it clear, Your Honor, that I am now receiving "unallocated family support" and although both Your Honor and Mr. Falk referred several times to the figure of 40% for child support, I do not even receive that percentage from my former husband. I receive 35.5% which Judge Kuhar based on [Mr. Randich's] W-2 income of $75,000 plus his side-job earnings (from heating and air-conditioning jobs) of $6,000 which totals $81,000 in earnings.

* * * * * * *

It is agreed on all of our parts that the "Temporary Change of Custody" of * * * [LR] constitutes a change of circumstances regarding support. I stated in court, Your Honor, that 1 year ago, in April 2000, after our Divorce Judgment was entered, Mr. Falk also asked for a modification of support due to the fact that * * * [LR] had been staying with [Mr. Randich] for about 4 months. It was ordered that I reimburse [Mr. Randich] for this time. * * *

On April 18, 2001, a decision was entered by the circuit court with respect to the September 2000 motion for modification of support. The decision provides, in pertinent part:

This cause coming on to be heard on the Defendant's [Mr. Randich's] Petition for Reduction of Unallocated Support due to the change of physical custody of * * * [LR], and the attendance at college of * * * [CR], and the Court having considered the facts, affidavits and arguments, finds that a substantial change of circumstances has occurred warranting a review of Unallocated Family Support.

THEREFORE, the Court orders that Unallocated Family Support be reduced from its current level to $25,200 per year retroactive to October 1, 2000. The Court further allocates the Dependent Deductions as follows: beginning in the year 2001, [Ms. Randich] will claim the deduction for * * * [CR, SR, and AR]. [Mr. Randich] will claim the deduction for * * * [LR] if allowable under the Tax Code.

IT IS FURTHER ORDERED that any credits due [Mr. Randich] because of retroactivity of this order is to be

offset against the sum of $3,812.95 which is currently due to [Ms. Randich] and the net balance is to be paid in six equal installments with the first to be paid on June 1, 2001 and the first of each succeeding month until paid.  * * *

On or about February 2002, an affidavit for wage deduction order and interrogatories/answer to wage deduction proceedings was filed with the circuit court.

On March 14, 2002, Mr. Randich filed with the circuit court a motion to adjust child support and a notice of motion.

On April 3, 2002, Mr. Randich filed with the circuit court a motion to adjust child support and to address non payment issues and a notice of motion.

On August 30, 2002, Mr. Randich filed with the circuit court a motion for modification of support.

On September 11, 2002, Mr. Randich again filed with the circuit court a motion to adjust child support and a notice of motion.

On October 30, 2002, an order relating to Mr. Randich's motion to adjust child support was entered by the circuit court. The order provides, in pertinent part:

This matter coming before the Court on motion of Petitioner [Mr. Randich] to set child support and the Court hearing arguments and representations and being fully advised in the premises and based on the Court's finding of Petitioner's [Mr. Randich's] gross income of approximately $78,000, it is hereby ordered as follows:

1.  That child support is set in the sum of $525.86 bi-weekly as of June 22, 2002.  * * *

On February 5, 2004, an order with respect to a petition for rule to show cause was entered by the circuit court.[2] The order provides, in pertinent part:

> That this Matter coming on to be heard on the Petition for Rule to Show Cause previously entered against GERALYN M. RANDICH on January 8, 2004, for failure to include unallocated support on her 2000 tax return as ordered in the judgment for dissolution of marriage; Petitioner [Mr. Randich] present and represented by counsel and respondent Geralyn M. Randich appearing pro se:
>
> The Court finds:
>
> 1.  That GERALYN M. RANDICH is found to be in indirect civil contempt for failure to characterize the unallocated support as maintenance on her 2000 Federal and State tax return, as ordered by the Court on April 12, 2000, in the judgment for dissolution of marriage.
>
> 2.  That GERALYN M. RANDICH shall have the opportunity to purge herself from contempt by filing an appropriate amended Federal and State tax return for 2000 properly characterizing the payments received in 2000 as maintenance or unallocated support.
>
> 3.  That sentencing is stayed for 60 days pending the filing of the amended 2000 Federal and State tax returns.

---

[2] Ms. Randich objects to this document's being entered into evidence on the grounds of relevance, in that the information contained therein is not related to the matter at issue, is unfair and prejudicial, and promotes confusion of the matter at issue. A ruling on Ms. Randich's objection was delayed for consideration. This document will be received into evidence subject to Ms. Randich's objection noted in the record.

On April 5, 2004, an order with respect to a petition for rule for contempt of court was entered by the circuit court.[3] The order provides, in pertinent part:

> This Matter coming on to be heard on the Petition for Rule for Contempt of Court previously entered against Geralyn Randich on February 5, 2004, and the purge of that contempt; Geralyn Randich appearing in open Court and producing her amended 2000 Federal and State Income Tax Return filed with the Internal Revenue Service on March 27, 2004, the Court being fully advised in the matter:
>
> It is Hereby Ordered:
>
> 1. That Geralyn Randich having filed the Amended 2000 Federal and State Tax Return the contempt of Court previously entered is hereby held for <u>naught</u>.
>
> 2. That Geralyn Randich is Ordered to pay $750 as and for attorney's fees to Theresa M. Malysa in monthly installments as follows: May 1, 2004, $150 to be paid and thereafter on the first day of the month $100 until the balance is paid in full; and judgment is entered against Geralyn Randich in said amount.

On April 15, 2001, Ms. Randich timely filed her Federal income tax return for taxable year 2000. On her return, Ms. Randich did not report as income the $28,800 in payments made to her by Mr. Randich pursuant to the judgment for dissolution of marriage in petitioners' divorce because she considered the full amount to be nontaxable child support.

---

[3]Ms. Randich objects to this document's being entered into evidence on the grounds of relevance, in that the information contained therein is not related to the matter at issue, is unfair and prejudicial, and promotes confusion of the matter at issue. A ruling on Ms. Randich's objection was delayed for consideration. This document will be received into evidence subject to Ms. Randich's objection noted in the record.

On April 15, 2001, Mr. Randich timely filed his Federal income tax return for taxable year 2000. On his return, Mr. Randich claimed a deduction of $28,800 as alimony paid during tax year 2000 to his former spouse, Ms. Randich, pursuant to the judgment for dissolution of marriage in petitioners' divorce.

Following the examination by the Internal Revenue Service (IRS) of Ms. Randich's and Mr. Randich's 2000 Federal income tax returns, Ms. Randich took the position that the payments made by her former spouse, Mr. Randich, to her are nondeductible child support for the taxable year 2000 and are not includable in her income pursuant to section 71(c)(2). Mr. Randich, however, took the position that the payments made to his former spouse, Ms. Randich, constitute alimony paid during taxable year 2000, which he is entitled to deduct pursuant to section 215 and which is taxable to Ms. Randich pursuant to section 71.

As a result, respondent issued notices of deficiency to both Ms. Randich and Mr. Randich to avoid the possibility of being in a whipsaw position. On December 4, 2002, respondent issued Ms. Randich a notice of deficiency for taxable year 2000. In the notice of deficiency, respondent determined Ms. Randich had unreported alimony income of $28,800 and was liable for a deficiency of $6,091. On October 15, 2003, respondent issued Mr. Randich a notice of deficiency for taxable year 2000. In the notice of deficiency, respondent disallowed Mr. Randich's claimed

deduction of $28,800 for alimony paid during tax year 2000,
determining that the payments were nondeductible child support
and that Mr. Randich was liable for a tax deficiency of $6,683.

## Discussion[4]

In the present circumstance, respondent is caught in a
potential "whipsaw" position.  A whipsaw occurs when different
taxpayers treat the same transaction involving the same items
inconsistently, thus creating the possibility that income could
go untaxed or two unrelated parties could deduct the same
expenses on their separate returns.  In such circumstances, the
Commissioner is fully entitled to defend against inconsistent
results by determining in notices of deficiency that both parties
to the transaction are liable for the deficiency.  Estate of
Dooley v. Commissioner, T.C. Memo. 1992-557; Moore v.
Commissioner, T.C. Memo. 1989-306.

The deductibility of alimony is governed by sections 71 and
215.  The Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369,
sec. 422, 98 Stat. 795, applicable to divorce instruments
executed after December 31, 1984, amended both sections.  The
parties have stipulated that the judgment for dissolution of
marriage was entered by the circuit court on April 12, 2000.

---

[4]We decide the issues in this case without regard to the
burden of proof.  Accordingly, we need not decide whether the
general rule of sec. 7491(a)(1) is applicable in this case.  See
Higbee v. Commissioner, 116 T.C. 438 (2001).

Consequently, sections 71 and 215, as amended by DEFRA, govern the payments in issue.

Section 215(a) allows an individual, in computing adjusted gross income, to deduct amounts paid during the year if those amounts are includable in the gross income of the recipient under section 71(a).  Section 215 provides in relevant part:

SEC. 215.  ALIMONY, ETC., PAYMENTS.

(a) General Rule.--In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

(b) Alimony or Separate Maintenance Payments Defined.-- For purposes of this section, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71.

Therefore, any disqualification from inclusion by the recipient spouse under section 71 will automatically preclude deduction by the payor under section 215.  Consequently, the recipient of alimony payments must include those payments when calculating his or her gross income.  Sec. 61(a)(8).  However, payments to support children generally are not deductible.  Sec. 71(c)(1). Therefore, a determination that a payment is or is not "alimony" is also a determination of who must shoulder the tax burden of that payment.

Section 71(a) provides that "Gross income includes amounts received as alimony or separate maintenance payments."  As

previously stated, alimony or separate maintenance payments are defined by section 71(b), which provides in part:

> SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>>>
>>> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

It is clear that in this case both the temporary order for maintenance and support and the judgment for dissolution meet the criteria of section 71(b), and payments made therefore are alimony.

However, section 71(c)(1) provides that section 71(a) "shall not apply to that part of any payment which the terms of the divorce or separation instrument fix * * * as a sum which is payable for the support of children of the payor spouse."

In general, child support cannot be inferred from intent, surrounding circumstances, or other subjective criteria for purposes of section 71.  Rather, the statutory directive that child support payments be "fixed" is taken literally.  The inflexibility of this requirement was recognized by the Supreme Court in Commissioner v. Lester, 366 U.S. 299 (1961).  In that case, the Court refused to find by inference that the statutory requirement was met where the parties' agreement provided for percentage reduction of payments by a husband to a wife upon the marriage, emancipation, or death of any of their three children. The Court examined the legislative history of the statutory predecessor of section 71(c)(1) and quoted from the report of the Office of the Legislative Counsel to the Senate committee which said:

> "If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife ....  If, however, that amount paid the wife includes the support of children, but no amount is specified for the support of the children, the entire amount goes into the income of the wife ...." * * *

Commissioner v. Lester, supra at 303 (quoting Hearings before Senate Committee on Finance on H.R. 7378, 77th Cong., 2d Sess. 48) (emphasis supplied)).  The Court went on to conclude:

> This language leaves no room for doubt.  The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income.  The statutory requirement is strict and carefully worded.  It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax.  It says that the "written

> instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress.

Id. Consequently, in the case of unallocated or undifferentiated support for a wife and children, none of the amount is treated as child support under section 71(c)(1).

In applying the principle of Lester, this Court has repeatedly refused to allow inference, intent, or other nonspecific designations of payments as child support to override the clear rule of section 71(c)(1). See, e.g., Mass v. Commissioner, 81 T.C. 112, 123 (1983); Blakey v. Commissioner, 78 T.C. 963 (1982); Giordano v. Commissioner, 63 T.C. 462 (1975); Grummer v. Commissioner, 46 T.C. 674 (1966).

DEFRA changed the portion of the Lester decision that held that no amount would be considered child support unless it was specifically designated as such in the divorce or separation agreement.

Under the current statute, if any amount specified in the instrument will be reduced: (1) Upon the happening of a contingency related to a child of the payor, or (2) at a time which can clearly be associated with such a contingency, then the amount of the specified reduction will be treated as child support rather than alimony. Sec. 71(c). The above principle was recognized in Berry v. Commissioner, T.C. Memo. 2005-91, where we stated:

While the exception (to the general rule of inclusion) for amounts "fixed" as child support remained essentially unchanged, see sec. 71(c)(1), Congress did overturn the result in Commissioner v. Lester, supra, see sec. 71(c)(2) (reduction in support that is clearly associated with a contingency, specified in the divorce or separation instrument, that relates to a child will be treated as an amount fixed as payable for child support). Lester continues, however, to stand for the proposition that, subject to section 71(c)(2), amounts will not be treated as child support for purposes of section 71 unless specifically designated as such in the governing divorce document.* * *

We must decide, therefore, whether the support terms of the temporary order and the judgment for dissolution of marriage, under which Ms. Randich received the payments at issue for the 2000 taxable year, fixed a sum as payable for the support of petitioners' minor children.

Neither the temporary order entered on March 25, 1998, nor the judgment for dissolution of marriage entered on April 12, 2000, provided for a fixed amount payable for the support of petitioners' children. Ms. Randich was awarded unallocated family support of $1,200 per paycheck, or $2,400 per month. Furthermore, the provision for unallocated family support did not contain any of the contingencies set forth in section 71(c)(2).

Therefore, normally we would hold that all of the $28,800 annual payment made by Mr. Randich to Ms. Randich would be considered alimony deductible by Mr. Randich, the payor, and taxable to Ms. Randich, the payee.

However, in September 2000, Mr. Randich filed a motion for modification of support. The grounds for his motion were that after the divorce judgment entered on April 12, 2000, the oldest son, CR, became emancipated, and there was a change of custody for a minor child, LR, from Ms. Randich to Mr. Randich. The circuit court, having jurisdiction over this matter, entered an order on March 5, 2001, finding that "the change of custody of the minor child, CR, constitutes a change of circumstances regarding support." At that time, the circuit court did not modify the amount of the unallocated family support set forth in the April 12, 2000, judgment of divorce.

The circuit court, on April 18, 2001, entered a decision and order with respect to the motion for modification of support and found that after consideration of the facts, affidavits, and arguments of the parties, a substantial change of circumstances had occurred warranting a review of unallocated family support. The circuit court ordered that unallocated family support be reduced from its then-current level of $28,800 to $25,200 per year retroactive to October 1, 2000. The monthly amount was reduced to $2,100. Because of the retroactive effect of the order, Mr. Randich was due an offset of $3,812.95.

Because of the circuit court's order of April 18, 2001, retroactively reducing the unallocated family support to $25,200 effective October 1, 2000, we hold that for the taxable year

2000, Ms. Randich must include $27,900 (9 months x $2,400 = $21,600 + 3 months x $2,100 = $6,300) as alimony income under section 71, and Mr. Randich is entitled to a deduction for alimony pursuant to section 215 in the like amount.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered under Rule 155.